.117   629
177    712

THE STATE v. HERMANN *et al., Appellants.*

Division Two, November 9, 1893.

1. **Evidence.** Irrelevant evidence is properly excluded.

2. **Criminal Law:** MANSLAUGHTER: ACCESSORIES. Manslaughter
   admits of accessories before the fact, except, it seems, as to man-
   slaughter *per infortunium* or *se defendendo* (*State v. Phillips, ante*, p.
   389, as to this point overruled.)

3. ———: ———: PRINCIPAL. One present and aiding in the commis-
   sion of manslaughter is a principal and not an accessory before the
   fact.

4. ———: EVIDENCE. The exclusion of a conversation between the
   deceased and one engaged in the fight preceding the killing, cannot
   be treated as error in the absence of evidence as to the nature of the
   conversation.

5. **Manslaughter:** INSTRUCTIONS. Instructions on manslaughter in
   the fourth degree approved.

*Appeal from Linn Circuit Court.*—HON. G. D. BURGESS,
Judge.

AFFIRMED.

*Oscar F. Smith* and *Crawley & Son* for appellants.

(1) The court erred in excluding the question asked Johnson Burnett on cross-examination as to what he said to Bates Johnson at the barn (Brown being present) immediately before Johnson and Brown left the barn. (2) There was no evidence to show that defendant Baptiste was present, aiding and abetting. the homicide. Something more is necessary than proof of physical presence or even mental approbation, unless there be proof of previous conspiracy or a common design. *State v. Cox*, 65 Mo. 23; *State v. Hickman*, 95 Mo. 332; *State v. Johnson*, 111 Mo. 578; 1 Wharton [8 Ed.], sec. 211. (3) The witness, Fred Remmert, ought to have been permitted to relate the entire conversation between Bates Johnson and Joseph Brown immediately before they left the barn and began the affray. *State v. Sloan*, 47 Mo. 604. (4) The state's fourth and fifth instructions do not correctly declare the law. (5) The state's eleventh instruction was also wrong. It is only where the weapon used is deadly that the law presumes an intention to kill from the mere fact of its use. *State v. O'Hara*, 92 Mo. 59; *State v. McKinzie*, 102 Mo. 620; *State v. Talmage*, 107 Mo. 543. (6) Instruction number 2 asked by defendant Baptiste Hermann, at the close of all the evidence, should have been given. *State v. Phillips*, 22 S. W. Rep. 1079. (7) The court erred in not instructing on all the law applicable to the case. Baptiste Hermann was entitled to have the jury told in plain terms: *First*, that neither his presence at the time the stick was thrown, nor his mental approbation of the throwing (had the latter been proven) would warrant his conviction; and, *second*, that said defendant might lawfully seize and, if necessary, strike Brown, in defense of himself, or of his brother, or in keeping or restoring the peace of his own

premises.    *State v. Cox*, 65 Mo. 29; Revised Statutes, 1889, sec. 3462.

*R. F. Walker*, Attorney General, and *Morton Jourdan*, Assistant Attorney General, for the state.

(1) There can be no question but that the testimony in this case was sufficient to authorize the trial judge to submit to the jury the question of the guilt or innocence of both of the defendants.   There is no evidence or suggestion that this discretion has been abused, or that the conclusions of the jury were prompted or actuated by prejudice or passion; this being true, this court will not interfere with their finding, and the suggestion of the appellant of a want of testimony to authorize the verdict must be determined against them. *State v. Moxley*, 115 Mo. 644; *State v. Jackson*, 106 Mo. 181; *State. v. Orrick*, 106 Mo. 111; *State v. Lowe*, 93 Mo. 547.   (2) It is very clear, from the reading of the testimony, that the jury was authorized in concluding and saying that defendant Baptiste Hermann was present, aiding and abetting his brother, Joe Hermann, in the commission of the felony.   Hence, the demurrer to the testimony offered by defendant Baptiste Hermann was properly overruled.   *State v. Warner*, 74 Mo. 83.   (3) The instructions in this case are in the usual and approved form, and when read together clearly present to the jury every issue raised by the testimony, and are not subject to the criticism of appellants' counsel.   No error was committed in denying those refused to defendants.

GANTT, P. J.—At the adjourned October term, 1890, of the Chariton county circuit court, the grand jury returned an indictment against the defendants. It consisted of two counts, the first count charged

defendants, Joseph and Baptiste Hermann, with murder in the second degree, in the killing of one Joseph A. Brown, on the thirteenth of December, 1890. The second charged Baptiste Hermann with being accessory to the crime. At said term defendants were arraigned and each for himself entered a plea of not guilty; they jointly filed their application and affidavit for a change of venue, which was allowed, and the cause ordered transferred to the Linn circuit court, held at Brookfield, Missouri. At the February term of the Linn circuit court, held at Brookfield, the cause was continued, upon the application of defendants, until the regular September term, 1891, at which term the defendants were tried, convicted of manslaughter in the fourth degree, and their punishment assessed at two years in the penitentiary. After unsuccessful motions for a new trial and in arrest, they appealed to this court.

The evidence tended to prove these facts: that on the thirteenth day of December, 1890, the defendants, the deceased, and several other parties attended a turkey shooting match on the farm of the widow Grotjon in Chariton county, Missouri; that during the progress of the shooting match a dispute arose between Bates Johnson and Ed. Grotjon, which resulted in a fight between these two parties; others soon participated in the trouble, and when one Henry Laker ran in, the deceased, Joe Brown, told him to stand off; the defendants then came running up, one with a club and the other with a shotgun. Joe Hermann laid down his gun, and picked up a club which he threw at and struck Joe Brown on the left side of the head; from the effects of the blow Brown staggered and fell, when Baptiste Hermann jumped up and grabbed Brown and struck him three or four licks in the face with his fist. All the parties then stopped fighting,

and Brown started home in company with the negro boy, Hez Moore, who lived with his father; along the road Brown was compelled to sit down and rest, and complained of a very serious pain in his head; after going home he retired, and remained in bed three or four hours, when, from the effects of the blow with the club, he died.

The doctors (the coroner and his assistant) who held an autopsy found under the skull bone a clotted mass of blood. They testify that death resulted from concussion occasioned by the blow. The defendants were both arrested the same night, about midnight, by sheriff Anderson, to whom each of them denied the fact that Joseph Hermann had thrown the club, but said to the sheriff that Henry Laker had thrown the club that struck Brown and knocked him down. Upon the trial of the case defendants testified that Joseph Hermann threw the club; that at the time he did so, Brown was advancing upon him with a club raised; that it was thrown in self-defense. They are, however, contradicted by other witnesses who all say that Brown was standing perfectly still at a distance variously estimated from five to fifteen feet away; that the two Hermanns ran up to where the fight was in progress between Johnson and Grotjon, and that defendant Joseph Hermann said, "Shoot them down, every one of them." It also appears from the testimony that, when the difficulty first arose, Brown was at the barn, some distance from the place of quarrel. Baptiste Hermann was a son-in-law of Mrs. Grotjon and resided on her farm at the time of the killing.

The rulings of the court will appear in the further discussion of the assignments of error.

I. During the cross-examination of the witness, Johnson Burnett, counsel for defendants asked him if he communicated to Bates Johnson anything Ed.

Grotjon had said about the turkeys. The objection of the prosecuting attorney to the question as irrelevant was sustained. Witness was then asked if he made *any kind of communication* to Bates Johnson with regard to Ed. Grotjon in the presence of deceased. The objection to this was also sustained. No offer was made to show what the communications were, or how they were material to the issue on trial.

What Burnett said to Bates Johnson was foreign to the case. The question did not disclose anything that was material, and the answers were properly excluded. There was no pretense that the deceased said or did anything there that might characterize his subsequent conduct. *State v. Douglass*, 81 Mo. 231.

II. It is next insisted that the court should have directed a verdict of acquittal as to Baptiste Hermann, and the refusal of the circuit court to so instruct, either at the close of the state's case or after all the evidence was in, is urged as error.

There is much evidence that Joseph and Baptiste Hermann came on the scene simultaneously, Joseph armed with a gun, Baptiste with a club; that Joseph laid down his gun and took up a club which he threw at and struck the deceased, Brown, on the left side of the head: there was evidence that this club was a deadly or dangerous weapon. Baptiste was present. He heard his brother shout as they ran together to the place of difficulty between Johnson and Grotjon, "Shoot them down, every one of them."

After this he saw his brother assault Brown, the deceased, with a club and knock him down. There is evidence then that, as the deceased attempted to rise, the defendant, Baptiste, to use the language of the witness, "grabbed him and commenced to hit him." Another witness says, "he jumped on him and hit him with his fist." Brown died that night from the effects

of the blows received in the encounter. From this evidence the jury might well find that they were both actively aiding, assisting and abetting each other and therefore both were principals and each responsible for the crime committed by the other in their united and combined assault upon the deceased.

But it is argued that defendant Baptiste cannot be convicted of manslaughter, because Joseph, whom he was aiding and abetting, struck the blow which caused the death of Brown, and was only convicted of manslaughter, and that in manslaughter there can be no such thing as an accessory before the fact. In *State v. Phillips, ante* p. 389, it was said, *arguendo,* that there could be no accessory in manslaughter, and citing *Bibithe's case,* 4 Coke 43*b;* 1 Hale's Pleas of the Crown, 437. If this statement could be confined and limited to those homicides denominated at common law as involuntary manslaughter, *homicide per infortunium,* it would appear to be founded on reason, but inasmuch as by our statute all accessories before the fact are now made principals, and the distinction between principals in the first and second degrees has been abolished, the rule stated in 1 Hale's Pleas of the Crown, 437, and cases cited in *State v. Phillips, supra,* is too broad under our statutes, and was not necessary to the decision of that case.

Bishop in his first volume of criminal law [8 Ed.], section 678, says that manslaughter does not commonly admit of an accessory before the fact, "yet probably there may be a manslaughter wherein this is not so." "And there may be principals of the second degree in manslaughter."

The dictum of Lord Hale was expressly considered in *Gaylor's case,* Dearsly & Bell's Crown Cases in 1857, p. 291, and it was said by ERLE, J., on appeal, "if the manslaughter be *per infortunium* or *se defendendo* there

is no accessory; but there are other cases in which there may be accessories. That seems to be the solution of Lord HALE's *dictum*.

In 7 Cox Criminal Cases, 253, the same case is reported, and ERLE, J., is made to say: "It is clear that Lord Hale, in laying down the law in the passage cited (the same cited in *Phillips' case*), only alludes to cases of killing *per infortunium* or *se defendendo*. In other cases of manslaughter there seems to be no reason why there may not be accessories." And such is the reasoning of 1 Bishop, 348a. ——2, in which he shows that the absence of malice reduces the homicide from murder to manslaughter in voluntary manslaughter. See, also, *Rex v. Murphy*, 6 C. & P. 103.

In *Stipp v. State*, 11 Ind. 62, this question came before the supreme court of that state upon a state of facts identical in principle with those in the case at bar, and it was insisted that, because the prisoner did not give the blow, and because there could be no accessories before the fact in manslaughter, he could not be convicted; but the court held that it was not necessary he should aid in striking the blow, but if he was engaged with the person who gave the blow which caused the death, in the common illegal undertaking, he was guilty as a principal.

In *Goff v. Prime*, 26 Ind. 196, the same court, under a statute which defined manslaughter thus, "If any person shall unlawfully kill any human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, such person shall be deemed guilty of manslaughter," held that one who was present aiding and abetting in the commission of a common assault and battery, resulting in the accidental death of the person assaulted, might be guilty of aiding and abetting in the perpetration of the crime of manslaughter. In

*Hagan v. State*, 10 Ohio State, 459, under a similar statute, the supreme court of Ohio held that the elements which constitute the crime of manslaughter, as defined by that statute, did not preclude the possibility that there might be aiders and abettors before the fact in the commission of manslaughter.

In *State v. Coleman*, 5 Porter, 32, the supreme court of Alabama said:   Upon authority, it seems unquestionable that there may be aiders and abettors in manslaughter; and Russell (1 vol. 456), lays it down that, 'in order to make an abettor to a manslaughter a principal in the felony, he must be present, aiding and abetting the fact committed.' ''

Under our statute, section 3944, Revised Statutes 1889, all distinction between principals and accessories before the fact have been abolished, and an accessory before the fact can be indicted and convicted as a principal.   *State v. Stacy*, 103 Mo. 11, and cases there cited.

Manslaughter in the fourth degree, under the statutes of this state, has often been defined by this court to be the intentional killing of a human being in a heat of passion on a reasonable provocation without malice, and without premeditation, and under circumstances that will not render the killing justifiable or excusable homicide; and section 3476 further defines it to be, "the involuntary killing of another by a weapon, or by means neither cruel nor unusual in the heat of passion in any case other than justifiable homicide."   *State v. Ellis*, 74 Mo. 215; *State v. Dieckmann*, 75 Mo. 570; *State v. Umfried*, 76 Mo. 404; *State v. Douglass*, 81 Mo. 231.

Under these statutes no reason is seen why two or more engaged in a common assault upon another may not be engaged in the killing of a human being in the heat of passion, and upon the same provocation, and

if all present are aiding and abetting each other why. they are not all principals, and equally guilty of manslaughter if death ensues, even though only one strikes the fatal blow. There was evidence to this effect in this case, and it was so found by the jury. We perceive no error in the action of the court in overruling the demurrer to the evidence, and refusing the two instructions drawn for that purpose. Under the evidence, Baptiste was a principal, and not an accessory before the fact at common law, even under Lord Hale's definition, as he was present, not absent, when the crime was committed. 1 Hale's P. C. 617; 4 Bl. Com. 37; *Rex v. Gorden*, 2 Leach, 581; *People v. Bearss*, 10 Cal. 68; Kelley's Criminal Law and Practice, sec. 49.

III. Defendants complain that their witness, Fred Emmert, was not permitted to tell all the conversation that occurred between Brown, the deceased, and Bates Johnson, but as in the case of Burnett, defendant made no attempt to show the court the relevancy or materiality of all that conversation and the court did permit the witness to state that Bates Johnson said that he was going to whip Ed. Grotjon, and asked deceased to stay with him and deceased said that he would stay with him. In the absence of all evidence as to what statements were excluded, or their nature, we cannot assume they were of such relevancy or importance as to require a reversal of this cause. *Bank v. Douglass*, 80 Mo. 199; *State v. Douglass*, 81 Mo. 231.

IV. The fourth and fifth instructions, read together, correctly informed the jury that, if the defendants, while in the heat of passion, aroused by the fighting and quarreling of deceased with friends and neighbors of defendants, threw the club and struck and killed Brown, not in a cruel or unusual manner, and without malice, and not in self-defense, they are guilty of manslaughter in the fourth degree; and if Joseph Hermann

threw the stick and killed Brown under these circum-
stances, and that Baptiste was present at the time,
aiding, assisting, and helping Joseph in the perpe-
tration of said assault, then both were equally guilty.
These two instructions fairly presented the law of the
case to the jury, and defendant's exceptions must be
overruled.   There was evidence to support them both.

The other instructions were full and liberal to the
defendants on the presumption of innocence, the
benefit of reasonable doubt and self-defense.   We find
no error in either of them, and there being sufficient
evidence to submit the case to the jury, their verdict
must stand.

Judgment affirmed.  SHERWOOD, Judge, concurs,
BURGESS, J., not sitting.