## STATE OF IOWA, Appellee, v. JOHN GRAY, Appellant.

116   231
116   222
116   231
122   131
116   231
126   501
116   231
129   264
116   231
f135   50
116   231
137   92

**Murder:** INDICTMENT. An indictment charging that an assault was felonious, deliberate, with malice and aforethought, and the killing was willful, deliberate, premeditated, and with malice aforethought, charges murder in the first degree.

EVIDENCE. It was proper to permit a witness to identify cartridges picked up by him near the scene of the killing shortly after the crime.

*Cross-examination.* A witness called by the state was asked on cross-examination as to trains passing near the scene of the crime at the time of the killing, defendant seeking to show that the one who fired the fatal shot might have escaped. *Held*, that the evidence was properly excluded, it not being cross-examination.

*Harmless Exclusion.* Even if the exclusion was erroneous it was harmless, defendant, having shown on defense that a train did pass, and some one hurriedly boarded it.

**Manslaughter:** EVIDENCE SUSTAINS CONVICTION. On a prosecution for murder, it was shown that deceased was seen running away from four men who were pursuing him, and that three shots were fired, one killing deceased. Six witnesses testified that defendant was one of the pursuers, and some testified that he fired at least one shot. Some testified that they saw defendant pointing a revolver at deceased after he had fallen. There was testimony that another of the pursuers had a revolver when the killing occurred. *Held*, that the evidence sufficiently identified accused as the one who fired the fatal shot, to sustain a conviction.

SENTENCE SUSTAINED. The maximum punishment for manslaughter imposed on defendant, will not be reduced, though the evidence as to the identification of accused as the one who fired the fatal shot was not strong.

PRINCIPAL AND ACCESSORY. One may be accessory to manslaughter, if present, aiding and abetting.

*Charge and proof.* An instruction that the defendant might be guilty, though he did not fire the fatal shot, if he assisted or abetted in the perpetration of the crime, was not open to the criticism that there was nothing to show defendant an accessory before the fact.

*Appeal from Marshall District Court.*—HON. G. W. BURN-HAM, Judge.

### WEDNESDAY, APRIL 9, 1902.

DEFENDANT was jointly indicted with one Pat Dunn for the murder of Joseph Williams. See *State v. Dunn,* 116 Iowa, 219. Gray demanded a separate trial, and was convicted of manslaughter, and from the verdict and judgment pronounced against him appeals.—*Affirmed.*

*J. L. Carney* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the state.

DEEMER, J.—About 6 o'clock in the evening of August 27, 1900, a number of men, estimated at from 5 to 15, were near the stock yards of the Chicago & North-Western Railway Company, in the city of Marshalltown. They, or some of them, were drinking beer from a keg. Defendant and Dunn were among the number. Some little girls who were passing that way had a difficulty in the presence of the men, in which defendant attempted to interfere. Williams appeared on the scene about this time, and, driving his team near the place where the men were congregated, he charged them with having assaulted the girls, and warned them to depart. Gray and Dunn went to the wagon in which Williams was riding, and declared they would not go. Thereupon Williams got out of the wagon, but defendant and Dunn drove him back into it; and defendant told him to go on, or they would kill him.

At that, Williams took up his whip, and told them to move on, or he would use it. The evidence tends to show that the defendant put his foot on the wagon after Williams had been driven back into it, and said "he would take him out and kill him right there," and otherwise bantered with and threatened him. Williams then said "he would go home and get his revolver, and return and fight them." After going to his home, which was but a short distance away, Williams unhitched his team, put them in the barn, obtained a revolver, and returned to the place of encounter. As soon as he returned, a difficulty arose; and, according to the evidence, Williams was seen running away from the place, with four men pursuing, and while attempting to escape he was shot by some one of the four, and received the wounds of which he died in a short time. Three shots were fired, two of which took effect. There was testimony to the effect that both Dunn and Gray had revolvers at the time of the shooting, and some evidence that Gray fired one of the shots. Defendant contends, however, that there is not sufficient evidence to convict him of the crime, in that the identification of the man who fired the shot is unsatisfactory and incompetent. Without setting forth the record, it is sufficient to say that, while the evidence as to identification is not as strong as it might be, still there was ample to take the case to the jury, and sufficient, if believed, to justify the verdict. At least six witnesses stated that defendant was one of the men who was in pursuit of Williams at the time he was shot, and some of them said that he (defendant) fired at least one of the shots. Some of them also testified that they saw defendant pointing a revolver at Williams after he was down. All of them agree that Gray was one of the pursuing party, and that either he or one of the others fired the shot. There was also testimony to the effect that both defendant and Dunn had revolvers at the time the shooting occurred.

II.   A witness called by the state was asked on cross-examination about trains passing at or near the time in question, but on objection of the state the evidence was excluded. Defendant contends that he should have been allowed to show this, on the theory that the guilty party might, and probably did escape by taking this train. There was no error in the ruling, for it was manifestly not cross-examination.   But if conceded to be erroneous, it was without prejudice; for the defendant was allowed to show, in making out his defense, that a train left at or about the time in question; and that some one who had been near the scene of the difficulty had hurriedly boarded it.    This evidence was undisputed, and while the objection to the question was that it was incompetent and immaterial, and not that it was not proper cross-examination, no prejudice resulted.    Moreover, at the time the question was asked on cross-examination, it did not appear that the answer would be material.   Several questions propounded to various witnesses for the state were objected to as leading.   We will not set them out, for we do not feel that counsel so offended against the rule that we are justified in reversing the case on account thereof.   A witness who picked up some cartridge shells near the scene of the encounter, shortly after the tragedy, was permitted to identify them, and they were received in evidence over defendant's objection. There was no error in this. True, they did not tend to connect the defendant with the crime, but they were admissible as a part of the history of the case.

III.   Certain of the instructions are complained of. First, it is said that the court erred in instructing that defendant might be found guilty, although he did not fire the fatal shot, in the event he assisted, aided, or abetted in the perpetration of the crime, and that his offense would be the same as that of the principal.   The alleged error is predicated on two propositions:   First, that there was no evidence tending to show he was an accessory

before the fact; second, that one cannot be an accessory to the crime of manslaughter. The first proposition is met by what we have said regarding the evidence; and the second is not true, as an abstract proposition of law. It may be (although we do not decide the point) that one cannot be an accessory to involuntary manslaughter; or an accessory to voluntary manslaughter, when he is not present. But when the crime is committed voluntarily, and the person charged as an accessory is present, we do not see why he may not aid and abet in the commission thereof. Surely, if one may be guilty of an assault with intent to commit manslaughter, he may be guilty of aiding and abetting another in the commission of that crime. The authorities quite generally hold that there may be such connection on the part of an accessory before the fact with the wrongful act intended, and which caused death in its perpetration, that the accessory as well as the principal will be guilty. *Hagan v. State,* 10 Ohio St. 459; *People v. Newberry,* 20 Cal. 440; *State v. Robinson,* 12 Wash. 349 (41 Pac. Rep. 51, 902); *State v. Hermann,* 117 Mo. 629 (23 S. W. Rep. 1071). This is especially true where the statutes of the state, as in this jurisdiction, make an accessory guilty as principal. *State v. Hermann, supra; Stipp v. State,* 11 Ind. 62. See, also, *Hayes v. State,* — Wis. — (87 N. W. Rep. 1077). It will be observed that defendant was present when the crime was committed, and, according to the evidence offered by the state, he was actively aiding and abetting therein. The indictment did not charge that the assault made upon Williams was willful, but it does charge that defendant, "with the specific intent to kill and murder Williams, willfully, feloniously, deliberately, premeditatedly, and of his malice and aforethought, did shoot off and discharge the contents of a deadly weapon * * * into and through the body of said Williams, thereby * * *." The court instructed the jury on the theory that defendant might be convicted of murder in the first degree.

This is complained of, for that it is contended the indictment does not charge this degree of crime. We think it does. It charged that the assault was felonious, deliberate, and with malice and aforethought, and that the shooting was willful, deliberate, premeditated, and with malice aforethought. This was sufficient to describe murder in the first degree. *State v. Dunn,* 116 Iowa, 219; *State v. Stanley,* 33 Iowa, 526; *State v. Shelton,* 64 Iowa, 333; *State v. Perigo,* 70 Iowa, 657; *State v. Townsend,* 66 Iowa, 741; *State v. France,* 76 Mo. 681; *Plake v. State,* 121 Ind. 433 (23 N. E. Rep. 273, 16 Am. St. Rep. 408).

IV. Lastly we are asked to reduce the sentence on the theory that the evidence as to identification of the defendant is meager. The case, it must be admitted, is not strong in this respect, but we do not feel justified in interfering. The trial court saw and heard the witnesses, and was in a much better position than we to weigh the evidence. The fact that the extreme penalty was imposed is a strong indication that the trial court believed the defendant was not only guilty of the offense of which he was convicted, but probably of a higher degree of crime. But however this may be, the case does not call for interference by us. No prejudicial error appears, and the judgment is AFFIRMED.