The People of the State of Illinois, Defendant in Error, *vs.* Edward Barrett *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1913—Rehearing denied Feb. 5, 1914.*

1. Criminal law—*when the refusal to allow improper cross-examination cannot be urged as error.* The trial court's refusal to allow a witness for the People to be cross-examined as to a matter he had not testified to upon his direct examination cannot be urged as error upon the ground that when the defendants thereafter desired to call the witness to testify to such matter he could not be found.

2. Same—*defendants should subpœna People's witnesses they desire to use.* The People are not bound to produce and call all of the witnesses whose names are indorsed on the indictment, and if the defendants desire to call any of such persons as witnesses they should subpœna them to secure their presence.

3. Same—*when instruction that intent need not be proved by direct testimony is proper.* In a prosecution for murder, an instruction stating that the intent alleged in the indictment must be proved but that it is not necessary to prove it by direct and positive testimony, and which then details the circumstances under which such intent would be presumed, may be given. (*O'Donnell v. People,* 224 Ill. 218, distinguished.)

4. Same—*under the statute an accessory at the fact is considered as a principal.* Under section 2 of division 2 of the Criminal Code an accessory is one who stands by and aids, abets or assists, or who, not being present aiding, abetting or assisting, has advised, encouraged, aided or abetted the perpetration of the crime; and such accessory shall be considered as a principal and is punishable as such.

5. Same—*when a party may be convicted of manslaughter although another did the killing.* One who invites another to go with him while he engages in a fight, and is aware that the other is armed with a knife but makes no protest or objection to the threatened use of the knife, is guilty, under the statute, as a principal, and may be convicted of manslaughter where the killing was done by the other party while both were engaged in the assault in pursuance of a common design, which was clearly shown by their concerted action though no words were spoken between them.

Writ of Error to the Criminal Court of Cook county; the Hon. George Kersten, Judge, presiding.

DAY & GUENTHER, for plaintiffs in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and D. E. DETRICH, (GEORGE P. RAMSEY, and JOHN T. FLEMING, of counsel,) for the People.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

Plaintiffs in error, Edward Barrett and Henry Barrett, were jointly indicted for the murder of Walter Masterson. A trial before a jury in the criminal court of Cook county resulted in a verdict finding both defendants guilty of manslaughter, and each was sentenced to the penitentiary for an indeterminate period.

Walter Masterson was killed on the night of February 9, 1913, in a saloon in the city of Chicago, by plaintiff in error Edward Barrett, who stabbed him with a knife. The circumstances leading up to the killing, as detailed by the witnesses for the State, are as follows: Edward Masterson, a brother of the deceased, was working in the saloon on the night of the killing, his duties being to wait on customers in the wine-room in the rear of the saloon. During the evening Edward Barrett came to the saloon with a woman, and later Henry Barrett entered the wine-room, also accompanied by a woman. The wine-room was divided into booths, and the two brothers occupied separate booths. Shortly after midnight a controversy arose between Henry Barrett and Edward Masterson in the booth occupied by Henry Barrett, and resulted in Henry Barrett following Edward Masterson into the bar-room of the saloon and striking him two or three times with his fist. Upon leaving the wine-room Henry Barrett motioned for Edward Barrett to follow him, which he did, and the latter took a knife from his pocket, opened it and entered the bar-room with the open knife in his hand. At that time the deceased and another brother, named Pete Masterson,

were in the bar-room. When Henry Barrett struck Edward Masterson he urged the latter to fight. Edward Masterson responded that he would be foolish to fight him with his brother there with a knife in his hand but that he would fight if someone would prevent Edward Barrett from interfering. Thereupon Walter Masterson said that he would see that his brother got "fair play." Edward Barrett then approached Walter Masterson and engaged in a scuffle with him, during which he stabbed him in the heart with the knife which he held in his hand, killing him instantly. One witness for the State testified that when he entered the bar-room Henry Barrett also had a knife in his hand, but this is contradicted by all the other witnesses for the State, including Edward Masterson, and by the witnesses for the defendants. The evidence shows that Henry Barrett had no conversation with Walter Masterson, and that there was no conversation between Henry Barrett and Edward Barrett, either before or at the time of the trouble.

The evidence offered by the plaintiffs in error tended to prove that when Henry Barrett followed Edward Masterson into the bar-room the latter went behind the bar and secured a revolver from a drawer and that Henry Barrett then left the saloon; that Edward Barrett attempted to follow his brother but was stopped by Walter Masterson, who struck him, knocking him against the bar, caught him around the neck and held him against the bar; that while he was in this position Edward Masterson fired the revolver which he had obtained from the drawer, and Pete Masterson jumped over the bar and secured an unloaded revolver from the drawer and was snapping it; that thereupon Edward Barrett took a knife from his pocket, opened it, and said to Walter Masterson, "Now, you let me go or I will stick this in;" that instead of releasing him Walter threw him to the floor, and as they were falling the knife accidentally penetrated Walter's heart. Edward Barrett testified that when he took the knife from his pocket he had

no intention of using it; that his purpose was to frighten Walter so that he could get away from the saloon, as he thought his life was in danger, and that he did not intentionally stab him with the knife. The testimony with reference to Edward Masterson securing a revolver was contradicted by the witnesses for the State, and these witnesses testified that when Pete Masterson secured the revolver from behind the bar Walter had been stabbed and plaintiffs in error had left the saloon.

It is complained that the court erred in not permitting plaintiffs in error to cross-examine the witness Trusch, the owner of the saloon, in reference to the revolvers he kept behind the bar and as to whether one of them was missing after the homicide. As this witness was not examined on this subject in his direct examination this was not proper cross-examination. Plaintiffs in error complain that they were not able to call this witness in their own behalf for the reason that he was not present when they desired to use him, and that they were not able to use three of the witnesses whose names were indorsed on the indictment and who had not been called by 'the prosecution, for the same reason. An attachment was issued for Trusch but he was not found. It does not appear that any of these witnesses had been subpœnaed by the defense or had been notified in any way that their presence would be required. The prosecution was not bound to produce and call to the witness stand all those whose names were indorsed on the indictment, and if the defense desired to call any such persons as witnesses they should have employed the proper means to insure their presence. Moreover, by agreement the testimony given by each of these persons before the coroner was read to the jury in lieu of their examination as witnesses on the trial.

Complaint is made of the giving of an instruction stating what was proper for the jury to consider in determining whether the killing was in "necessary self-defense," on

the ground that the instruction ignores the correct doctrine of apparently necessary self-defense. This instruction did not direct a verdict. Instructions were given on behalf of plaintiffs in error which explained fully to the jury what was meant by "necessary self-defense," one of these instructions using the same expression as that employed in the one given on behalf of the People. In the light of all the instructions given on the subject of self-defense the jury could not have been misled by this expression in the instruction complained of.

The court instructed the jury that the intent alleged in the indictment is necessary to be shown but that direct and positive testimony was not necessary to prove it, and then detailed the circumstances under which the intent requisite to make out the case as charged would be presumed. In their contention that the giving of this instruction was error plaintiffs in error rely upon *O'Donnell* v. *People,* 224 Ill. 218, where this instruction was held to be erroneous. The defendant in that case was indicted for an assault with intent to rob, and we held that this instruction was wholly inapplicable to that case but stated that the instruction would be proper on a charge of assault to commit murder. The instruction was properly given.

Complaint is made of the giving and refusing of other instructions and of the giving of three instructions by the court, on its own motion, on the subjects of presumption of innocence, reasonable doubt and the effect of the finding of the indictment. We have examined all these instructions and find no error in giving or refusing any of them.

It is contended that the verdict is contrary to the weight of the evidence and should have been set aside. The evidence on behalf of the People and that on the part of the plaintiffs in error conflict irreconcilably, and the jury were necessarily impelled to believe one set of witnesses and disbelieve the other. The jury saw the witnesses and heard them testify and chose to believe those testifying on behalf

of the People, and their verdict is abundantly supported by the evidence.

It is insisted in this connection that the jury were not warranted in finding Henry Barrett guilty of manslaughter as he took no active part in the killing of Masterson. The argument advanced is based upon the proposition that Henry Barrett could have been found guilty of manslaughter, under the facts disclosed, only upon the theory that he was an accessory before the fact, and that as under the common law there can be no accessory before the fact in the crime of manslaughter, the verdict as to him should have been set aside. Section 2 of division 2 of our Criminal Code provides that an accessory is he who stands by and aids, abets or assists, or who, not being present aiding, abetting or assisting, has advised, encouraged, aided or abetted the perpetration of the crime, and that such accessory shall be considered as a principal and punished accordingly. Under this statute we affirmed a conviction for manslaughter in *Ritzman* v. *People*, 110 Ill. 362, where the accused was one of a party who participated in an assault which resulted in the death of the person assaulted, although it was not shown that the accused directly caused the death. It was there held that it was not necessary to show that the accused threw the missile which caused the death in order to sustain a conviction for manslaughter, as it was shown that he was present encouraging the perpetration of the offense and was thereby equally guilty with the party who struck the fatal blow. In *Coates* v. *People*, 72 Ill. 303, where a conviction for the crime of manslaughter was affirmed, it was said that proof that either one of several jointly indicted struck the fatal blow and that the others were accessory at the fact would be sufficient to sustain a conviction of all of them as principals. In the case at bar the plaintiffs in error were jointly engaged in making an unlawful assault. When Henry Barrett followed Edward Masterson from the wine-room into the bar-room for the

purpose of making an assault upon him he beckoned his
brother to accompany him. Thereupon Edward Barrett
followed' Henry into the bar-room with an open knife in
his hand. That Henry knew his brother responded to his
signal to accompany him and that he had this weapon in
his hand is evident from the fact that Edward Barrett as-
sumed a position in the bar-room where he could be easily
seen by his brother, and that Edward Masterson, in re-
sponse to Henry's invitation to fight, said that it would be
foolish for him to fight him when his brother was standing
there with a knife in his hand, but that if someone would
prevent Edward Barrett from interfering he would fight
him. Edward Barrett was present, participating in the dis-
turbance, at the express invitation of the other plaintiff in
error, who made no protest or objection to the threatened
use of the knife, but, on the other hand, proceeded to con-
tinue his assault upon Edward Masterson. When the de-
ceased received the fatal thrust from the knife plaintiffs in
error were engaged in a common cause and there was per-
fect concert of action between them. Although Henry Bar-
rett did not strike the blow that killed the deceased, he was
present aiding and abetting his brother in the unlawful
assault and under the statute was a principal and equally
guilty with him. It is immaterial that no word was spoken
between plaintiffs in error from the time the trouble began
until after the killing, as the evidence of their common de-
sign, as well as the aiding and abetting of one by the other,
was as effectively and conclusively shown by their actions
as though by spoken words.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*