**STATE of Missouri, Respondent,**

v.

**Glenn CHERNICK, Appellant.**

**No. 45607.**

Supreme Court of Missouri,
Division No. 1.

June 10, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied July 8, 1957.

Paul L. Dobberstein, St. Louis, for appellant.

John M. Dalton, Atty. Gen., and W. Don Kennedy, Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

Defendant Glenn Chernick, on March 6, 1956, was convicted by a jury in the circuit court of St. Louis of robbery in the first degree by means of a dangerous and deadly weapon, and his punishment was assessed at 20 years' imprisonment in the State Penitentiary. He appealed to this court.

Defendant was charged with the robbery of the Southwest Bank in St. Louis, Missouri, on April 24, 1953. Defendant had been convicted of this offense at a previous trial where his punishment was assessed at 5 years' imprisonment. That conviction was reversed by this court in June, 1955. See State v. Chernick, Mo., 280 S.W.2d 56. Defendant was charged with and convicted of an assault with intent to kill growing out of the same bank robbery. That conviction was also reversed by this court. See State v. Chernick, Mo., 278 S.W.2d 741. These two cases may be read for a complete statement of the facts and circumstances pertaining to the robbery.

Defendant briefed five points: The first pertains to the trial court's ruling on objections made by the State's attorney to questions asked by defendant's attorney on cross-examination. The second has to do with the voluntariness of statements made by the defendant to the circuit attorney. In the third point, defendant contends that an answer to a question on cross-examination of the circuit attorney should have been stricken by the court as requested by the defendant's attorney. In the fourth assignment briefed, defendant contends that instruction No. 1, given by the court, is erroneous. Finally, the defendant says the argument of the State's attorney to the jury was beyond the scope of the evidence and was inflammatory and prejudicial.

The evidence discloses that on the morning of April 24, 1953, shortly after ten o'clock, three men entered the Southwest Bank. These men were later identified as Frank Vito, William Fred Scholl, and Fred Bowerman. After entering the bank, Bowerman, with a sawed-off shotgun in hand took a position on a counter. Scholl, with a pistol in each hand, stood near a counter while Vito gathered cash from the cages and cash drawers and placed it in a satchel. The amount was later determined to have been over $140,000. After Bowerman had taken his position on a counter, he gave orders to the employees of the bank and stated that they were going to stage a "holdup." Miss Alice Ruzicka, an employee at the bank, ducked underneath a counter where she was stationed and set off an alarm. Police officers arrived within a short time and shooting began. One of the police officers was wounded; Bowerman was wounded and later died in a hospital. Scholl was also wounded but survived. Vito took his own life by shooting himself. The money taken was recovered.

Before relating the evidence connecting the defendant with the crime, we state that the defendant Chernick claimed he was in Chicago, Illinois, on the day the robbery was committed and had been in that city all of that week. The day of the robbery, as mentioned above, was April 24, 1953.

Mrs. Mildred Ottinger testified that she lived at 1918 Victor Street in St. Louis and that on April 14, 1953, she rented two rooms on the third floor of her place to the defendant who gave his name as George Roche; that defendant stated that a man would stay with him; that defendant paid a month's rent and that she gave him a receipt therefor. Mrs. Margie Cheney, a witness, testified that she occupied a room on the second floor at Mrs. Ottinger's; that two men occupied rooms on the third floor and on the morning of the robbery, two men left the building about seven o'clock; that about eleven o'clock, one man returned; that, in her opinion, it was the defendant who came back. Later, police searched the rooms on the third floor where, in a wastebasket, they found a receipt for the rent made out to George Roche. The men did not return to the rooms after April 24.

Mrs. Angeline Strippgen testified she was employed in a sandwich shop at 2280 South Vandeventer across the street from the Southwest Bank; that on April 22, two men entered the restaurant and while there stood by the front window and looked toward the bank as they talked. She stated the defendant was one of the men.

Mrs. Gertrude Eschrich testified that during the week of April 24, 1953, two men entered her husband's hardware store where she was working at 2022 Gravois and the younger of the two men asked for a certain type of ammunition; that she looked for it but found that they had none of that kind; that the defendant was the man who wanted the ammunition; this witness stated that she was taken to the City Hospital where she identified Bowerman as the man with the defendant.

A number of witnesses testified that a green Oldsmobile was parked near the bank while the robbery was in progress; that the engine of this car was running; that a man got out of the car with a pistol in his hands and when police cars appeared on the scene, the man pulled a mask over his face and drove away. This man was described as about the same height and build as the defendant. One of these witnesses gave the police the license number of this Oldsmobile. It was found a few blocks away and proved to be a stolen car. Casmir Lapski, a newspaper vendor, testified through an interpreter. He made some statements inconsistent with the admitted facts of the case. For example, he thought the robbery occurred in 1940. However, his evidence was that on the day of the robbery the defendant drove a green car and stopped near the bank and two men got out and went into the bank; that defendant drove away.

The Circuit Attorney Edward Dowd testified that after the defendant was returned from Chicago, he had a conversation with him about the robbery. Dowd testified that the defendant stated he would tell all about the robbery if he would be assured that the sentence would be 10 years; that defendant stated he was in St. Louis on April 24 and that he recognized Mrs. Ottinger and Mrs. Cheney when these two women were at the police station for the purpose of identification. Mr. Dowd stated he asked the defendant if there was a woman involved in the robbery; that the defendant answered, "That is silly talk, there was no woman involved." Other statements made by the defendant to the circuit attorney indicating his aquaintance with the details of the robbery need not be related. While on the witness stand, the defendant admitted he had known Frank Vito who lived in Chicago near defendant's home.

We held in the two previous cases that the evidence was sufficient to sustain a verdict of guilty and on this appeal, the defendant has not contended otherwise.

Defendant's first assignment of error wherein he complained that the court unduly restricted his cross-examination of witnesses is without merit. A witness who at the time of the robbery was standing near the bank and had observed a green Oldsmobile testified for the State. She described the actions of the driver of this car and stated that the car was dark green. Defendant's attorney asked if she had not said the car was a two-tone green. On objection by the State, the court after sustaining the objection stated, "I know it is cross-examination, but you have to base your question upon something in the record." This was followed by an extensive cross-examination of the witness as to the color of the car and other matters.

While Gertrude Eschrich was being cross-examined, she was asked, "Could you say whether or not he (the younger of the two men who sought to buy ammunition) weighed two hundred and twenty pounds?" An objection that the question was repetitious was sustained by the court. The court did not err in so ruling that the witness had been cross-examined at length on this subject. Prior to this objection, in answer to one of the numerous questions on the subject, Mrs. Eschrich stated she was not a good judge of weight and added that "he wasn't too heavy and not too light; just very well built." It is apparent that the cross-examination was not unduly limited.

In the second point, defendant urges that the evidence of the circuit attorney as to statements made by the defendant was improperly admitted because the statements were obtained by duress. Evidence given by the circuit attorney at the other trials of the defendant, the admission of which caused a reversal of the convictions, was omitted at the present trial. As to the question of whether the statements were made under duress, there was evidence pro and con and the evidence in our opinion did not show duress. The trial court so ruled. Another argument made by the defendant is that he was under arrest at the time and was represented by counsel who was not present. Those facts do not render the statements inadmissible as a matter of law on the ground that they were not voluntarily made. State v. Bartlett, 359 Mo. 881, 224 S.W.2d 100, loc. cit. 105(9, 10); State v. Christian, Mo., 245 S.W.2d 895, loc. cit. 897, 898(1, 2).

In the third point briefed, the defendant says the trial court erred in not sustaining defendant's motion to strike an answer to a question asked the circuit attorney on cross-examination. To demonstrate what occurred, we quote from the record as follows:

"Q. I will ask you, Mr. Dowd, whether you ever asked this defendant

whether he was at the Southwest Bank on the 24th day of April, 1953, the date of the robbery? A. I did ask him.

"Q. What did he say?

"Mr. Dempsey: I will object to that as calling for a self-serving statement.

"The Court: No, overruled.

"Q. (By Mr. Dobberstein) What did he say? A. He refused to answer that question.

"Q. He refused to answer that question? A. Yes."

Thereafter, the defendant's attorney asked the court to strike the answer and to discharge the jury. These requests were refused. It is evident that defendant's attorney was insisting on having the witness answer the question. The State had objected. In this circumstance, defendant has no reason to complain. A party may not insist that a question be answered and then complain when the answer is not as expected. State v. Dougherty, 287 Mo. 82, 228 S.W. 786, loc. cit. 787(1, 2), and cases there cited.

■ Defendant's contention that instruction No. 1, given for the State, was not in proper form is without merit. The first attack on this instruction is that it assumed that the defendant was present at the scene of the robbery. A sufficient answer to that argument may be made by quoting a portion of the instruction as follows:

"* * * In this connection you are instructed that if upon consideration of all the evidence in the case, in the light of the instructions of the Court, you believe and find from the evidence, beyond a reasonable doubt, that at the City of St. Louis and State of Missouri, on the 24th day of April, 1953, the defendant, Glenn Chernick, if you find he was present at or near the scene of the Southwest Bank in the City of St. Louis, Missouri, did aid, abet, assist, advise or encourage Fred Bowerman, Frank Vito and William Fred Scholl, or any of them, with the intent that his presence should aid, abet, assist or encourage said Fred Bowerman, Frank Vito and William Fred Scholl, or any of them, to feloniously assault one Alice Ruzicka by means of a dangerous and deadly weapon or weapons, in the form of what is commonly known as a sawed-off shotgun, or a pistol or pistols, and by force and violence to the person of said Alice Ruzicka, or by putting her in fear of an immediate injury to her person, and against her will, said Fred Bowerman, Frank Vito, and William Fred Scholl, or any of them, did feloniously rob, steal, take and carry away from her presence and possession approximately sixteen thousand dollars, lawful money of the United States of the approximate value of sixteen thousand dollars, the money and property of the Southwest Bank, a banking corporation of the City of St. Louis, State of Missouri, in the care and custody of the said Alice Ruzicka, an employee of the said Southwest Bank, a banking corporation of the City of St. Louis, State of Missouri, or any part thereof however small, with the felonious intent upon the part of said Fred Bowerman, Frank Vito and William Fred Scholl and the defendant, Glenn Chernick, or any of them, at the time to wrongfully take and carry away and convert the same, or any part thereof, fraudulently to the use of the defendant or to their own use, then you will find the defendant, Glenn Chernick, guilty of robbery in the first degree by means of a dangerous and deadly weapon, and unless you so find the facts to be, you will acquit the defendant. * * *"

Defendant also says of this instruction that it did not require the jury to find the facts hypothesized and that it was assumed the defendant acted in concert with the others in the robbery; that the instruction failed to require that the defendant acted

with others in a common intent and did not require a finding that the defendant "intended to permanently deprive the owner of his property." The portion of the instruction above-quoted refutes all of the contentions made by the defendant. The instruction clearly required a finding of the facts hypothesized beyond a reasonable doubt. As to the argument that the instruction did not require a finding that it was intended to deprive the owner permanently of his property, we hold that a finding that property was forcibly taken and fraudulently converted to the use of the taker is a sufficient finding to constitute theft. State v. Smith, Mo., 68 S.W.2d 696, loc. cit. 698 (5); 77 C.J.S. Robbery § 22, p. 462.

In the last point briefed, defendant complains that the trial court permitted the State's attorney during the argument to the jury to argue matters beyond the scope of the evidence and also that the argument was inflammatory so as to prejudice the jury against the defendant. We have examined particular matters complained of and find defendant's contentions without merit. For example, he says that the prosecutor told the jury that the man inside the green Oldsmobile was identical in appearance to the defendant. It is claimed there was no such evidence. A number of witnesses testified that the man in charge of the Oldsmobile was similar in appearance to the defendant. It is also claimed that witness Lapski did not identify defendant as the driver of the car. Lapski testifying through an interpreter stated, "The machine came to the bank when two men got out of the machine, and Chernick made a turn and the other two went into the bank." The prosecutor's argument had support in the evidence. 23 C.J.S. Criminal Law § 1093, p. 546.

The prosecutor also commented on the evidence concerning the statements made by the defendant to the circuit attorney. He called to the attention of the jury that defendant had recognized Mrs. Ottinger from whom rooms had been rented and also recognized Mrs. Cheney who had a room in the same building. The prosecutor also noted that defendant stated that no woman had any part in the robbery. Certainly, these matters were in evidence and the prosecutor was within his rights to make the argument that such facts tended to prove defendant's guilt. 23 C.J.S. Criminal Law § 1105, p. 579. The entire argument of the prosecutor is in the record. The argument of the defendant's counsel was omitted. A number of the objections made by the defendant were to statements which appear to have been made in answer to defendant's argument. Since the defendant's argument is not before us, there is no way for us to determine the merits of a number of the objections made. For example, while the prosecutor was commenting on what the defendant's counsel had stated to the jury, an objection was made which the court overruled. In the state of the record, we cannot determine whether the prosecutor correctly related what defendant's counsel had said.

This is the third time defendant has been tried for his participation in the robbery in question. Certainly, all available evidence was presented to the jury. The errors for which the former convictions were set aside were avoided at this trial. We find no merit in any of the points briefed by the defendant. No prejudicial error appearing in the record, the judgment is affirmed.

All concur.