STATE of Missouri, Respondent,

v.

Ruth I. GREBE, Appellant.

No. 54524.

Supreme Court of Missouri,
En Banc.

Dec. 14, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

Ike Skelton, Jr., Lexington, Robert L. Rasse, Marshall, William E. Brandecker, Columbia, for appellant.

DONNELLY, Presiding Judge.

Appellant, Ruth I. Grebe, was convicted of manslaughter under §§ 559.070 and 556.-170, RSMo 1959, V.A.M.S., by the Circuit Court of Boone County, Missouri, and her punishment was assessed at imprisonment in the custody of the State Department of Corrections for a term of three years. § 559.140, RSMo 1959, V.A.M.S. Following rendition of judgment and imposition of sentence, an appeal was perfected to this Court.

Appellant, with her husband and children, lived on a farm adjoining and west of the Salem Cumberland Presbyterian Church in Johnson County, Missouri. A dispute arose between the Grebes and the trustees of the church as to ownership of a strip of land between the two properties.

On the morning of July 7, 1967, Larry Martin and his father, Robert Hugh Martin, members of the church, went to the church to mow the grass. An altercation occurred between the Martins and appellant, Kenneth Grebe, her thirteen-year-old son, and the Grebe dog. Robert Hugh Martin was killed. The parties do not question on this appeal that Robert Hugh Martin died as a result of a stab wound inflicted by Kenneth Grebe.

Appellant first contends the trial court erred in failing to sustain her motions for directed verdict of acquittal for the reason that the evidence is legally insufficient to justify a submission that she aided and abetted Kenneth Grebe in the alleged homi-

cide and, therefore, the submission thereof to the jury was prejudicially erroneous to her.

The parties agree that Larry Martin testified essentially as follows: Immediately prior to the altercation, the Martins, father and son, walked toward appellant, Ruth Grebe, her son, and their dog. They stopped within four or five feet of the Grebes and there was no conversation between them except one of the Grebes stated that the Martins should get off the property. Kenneth Grebe removed a six-inch knife from his trousers and began swinging it back and forth. The Grebe dog advanced rapidly toward Larry Martin, who removed a rubber hose from his pocket, and struck the dog. Kenneth Grebe stabbed Larry Martin in the groin with the knife. The dog grabbed Larry Martin's right arm and he concentrated on it. At that time Larry Martin didn't know where Ruth Grebe was, and he did not hear her say anything or see her do anything at that point. Larry Martin raised up and looked toward the west where he saw defendant Ruth Grebe pushing Robert Hugh Martin backward down the fence line with her hands shoving on his collar bone. Larry Martin hit Ruth Grebe with his hose. Ruth Grebe moved away from Robert Hugh Martin and "stood there and looked" at Larry Martin. Ruth Grebe then pulled Larry Martin backward by his shoulders. He then saw Ruth Grebe behind Robert Hugh Martin pulling him backward by his shoulders. At that time, there was blood on Robert Hugh Martin's clothing. The dog jumped on Robert Hugh Martin, Larry Martin hit the dog with his hose, and the dog got off. Larry Martin then assisted his father to rise and they left the scene and walked east toward the front of the churchyard. Robert Hugh Martin died as a result of a knife wound in the abdomen.

Appellant poses the issue as follows:

"The question is whether the testimony of Larry Martin, who, together with his father, Robert Hugh Martin, were engaged in an altercation on the morning in question, adduces sufficient evidence to make defendant Ruth I. Grebe an aider and abettor with the alleged act of her son, Kenneth Grebe, in stabbing Robert Hugh Martin."

The applicable general rules of law are well established. Section 556.170, RSMo 1959, V.A.M.S., reads as follows: "Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree."

In State v. Butler, Mo.Sup., 310 S.W.2d 952, at 957, this Court said: "It is well settled that a party may be charged with the commission of the felony and be held under such charge for being present and participating in concert with the others in the commission of the crime, or for being present and aiding and assisting another in doing it. It is not necessary that he, personally, have done all of the things which together make up the elements of the crime. * * * Under the accessory statute it is necessary only that he in some manner have aided or abetted those committing the criminal act. § 556.170, V.A.M.S. The practical effect of the statute is to virtually abrogate the distinction between principals and accessories."

In Nye & Nissen v. United States, 336 U.S. 613, at 619, and 620, 69 S.Ct. 766, at 770, 93 L.Ed. 919, the Supreme Court of the United States said: "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in United States v. Peoni, 2 Cir., 100 F.2d 401, 402. * * * Aiding and abetting * * * states a rule of criminal responsi-

bility for acts which one assists another in performing."

In State v. Cobb, Mo.Sup., 444 S.W.2d 408, at 412, this Court said: "The presence of the accused at the place of the commission of a criminal offense may be considered along with other incriminating evidence to determine if the total circumstances raise a reasonable inference that the accused was a participant or an aider or abettor in the crime. * * * Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction. * * *"

In People v. Barrett, 261 Ill. 232, 103 N. E. 969, at 971, the Supreme Court of Illinois said: "When the deceased received the fatal thrust from the knife plaintiffs in error were engaged in a common cause and there was perfect concert of action between them. Although Henry Barrett did not strike the blow that killed the deceased, he was present aiding and abetting his brother in the unlawful assault and under the statute was a principal and equally guilty with him. It is immaterial that no word was spoken between plaintiffs in error from the time the trouble began until after the killing, as the evidence of their common design, as well as the aiding and abetting of one by the other, was as effectively and conclusively shown by their actions as though by spoken words."

█ Under the evidence adduced, the jury could find that appellant knew Kenneth Grebe was armed with a knife and stabbed Larry Martin; that she and Kenneth Grebe thereafter engaged in a joint assault on Robert Hugh Martin; and that she intentionally aided and abetted Kenneth Grebe in the commission of the unlawful act of stabbing Robert Hugh Martin. In view of these facts, which distinguish the Missouri cases cited by appellant, the jury could find Ruth I. Grebe guilty of manslaughter even though Kenneth Grebe struck the fatal blow. State v. Hermann, 117 Mo. 629, 23 S.W. 1071. See annotations, 95 A.L.R.2d 175 and 12 A.L.R. 275.

We believe a submissible case was made for the jury.

Appellant next contends the trial court erred in giving and reading to the jury Instruction 11A, which reads, in part, as follows:

"The Court instructs the jury that if you find the defendant not guilty of murder in the second degree, then you will consider whether or not under the testimony in this case, the defendant is guilty of manslaughter.

"You are instructed that if you find and believe from the evidence beyond a reasonable doubt, Kenneth Grebe at the County of Johnson and State of Missouri did wilfully and feloniously, but without premeditation and malice aforethought, stab with a knife and kill one Robert Hugh Martin, and if you further find that the defendant, Ruth I. Grebe, was present at the said time and place, and knowing the unlawful intent of Kenneth Grebe, did aid, abet, help and assist Kenneth Grebe in the commission of such act, then you will find the defendant, Ruth I. Grebe, guilty of manslaughter and assess her punishment at imprisonment in the penitentiary * * *."

Appellant urges that the trial court should have instructed the jury that "* * * if you further find that the defendant, Ruth I. Grebe, was present at the said time and place, and knowing the unlawful intent of Kenneth Grebe, did *intentionally* aid, abet, help and assist Kenneth Grebe in the commission of such act * * *." (Emphasis ours.)

In State v. Chernick, Mo.Sup., 303 S.W. 2d 595, 599, this Court approved Instruction No. 1, which read, in part, as follows:

" "* * * In this connection you are instructed that if upon consideration of all the evidence in the case, in the light of the instructions of the Court, you believe and find from the evidence, beyond a reasonable doubt, that at the City of St. Louis and State of Missouri, on the 24th day of April, 1953, the defendant, Glenn Chernick,

if you find he was present at or near the scene of the Southwest Bank in the City of St. Louis, Missouri, did aid, abet, assist, advise or encourage Fred Bowerman, Frank Vito and William Fred Scholl, or any of them, *with the intent that his presence should aid, abet, assist or encourage* said Fred Bowerman, Frank Vito and William Fred Scholl, or any of them, to feloniously assault one Alice Ruzicka by means of a dangerous and deadly weapon * * *.'" (Emphasis ours.)

In State v. Taylor, Mo.Sup., 391 S.W.2d 835, 837, this Court said:

"The second point is that the court erred in giving Instruction No. 4 on aiding and abetting, by which the jury was instructed that all persons are equally guilty who act together with a common intent in the commission of a crime; that a crime committed by two or more persons acting jointly is the act of all and of each one so acting; that mere presence of an innocent, nonparticipating spectator does not render a person liable as a principal, but that if a person be present and by words or actions abets, assists, advises or encourages the crime, *with the intent to encourage and abet the crime committed,* then that person is equally guilty with the person or persons who actually commit the physical act." (Emphasis ours.)

We also note approval of the use of the words "with the intent that the words or acts should encourage and abet the crime committed," in State v. Russell, Mo.Sup., 324 S.W.2d 727, 732 (Instruction No. 2), and State v. Cooley, Mo.Sup., 387 S.W.2d 544, 549 (Instruction No. 2).

Our research has disclosed no Missouri case specifically ruling the question presented in this case. The question has been ruled in the Supreme Court of the United States and in the Supreme Court of Ohio.

In Hicks v. United States, 150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137, the Supreme Court of the United States reviewed a case arising out of the Circuit Court of the United States for the Western District of Arkansas. On February 13, 1892, in the Cherokee Nation, Stand Rowe, an Indian, shot and killed Andrew J. Colvard, a white man. John Hicks, an Indian, was tried as an aider and abettor and was convicted. The Court held that the instruction given to the jury by the trial court was erroneous because it "omitted to instruct the jury that the acts or words of encouragement and abetting must have been used by the accused with the *intention* of encouraging and abetting Rowe." (Emphasis ours.)

In Woolweaver v. State, 50 Ohio St. 277, 34 N.E. 352, 353, the Supreme Court of Ohio said: "If there was a conspiracy, each conspirator was chargeable with the acts of his co-conspirators. If there was no conspiracy, then, upon the springing up of a sudden fight, each should be chargeable only with his own acts, and such acts of the others as he may *purposely* incite or encourage. * * * Where satisfactory proof of a conspiracy has not been produced, it often becomes a nice and difficult matter to determine the criminal liability of each of a part of friends or kindred for the violent and unlawful acts of his fellows, committed in the course of a conflict, arising upon a sudden quarrel, with one or more antagonists; and in such case, upon the trial of one of them, it is of the first importance that the correct rule of liability should be laid down to the jury, and if the instructions should extend too far as to the liability of the one on trial for the acts of his fellows it would be, necessarily, prejudicial to his rights." (Emphasis ours.)

The State tried appellant as an aider and abettor in this case. Instruction 11A did not require the jury to find that appellant *intentionally* aided and abetted Kenneth Grebe in the commission of the act of stabbing Robert Hugh Martin. We consider appellant's intent in this regard an essential element of the State's case. We hold the instruction prejudicially erroneous.

The judgment is reversed and the cause remanded.

PER CURIAM:

The foregoing opinion by DONNELLY, J., is adopted as the opinion of the Court.

HENLEY, C. J., and FINCH, DONNELLY, SEILER and BARDGETT, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

HOLMAN, J., dissents and concurs in dissenting opinion of MORGAN, J.

MORGAN, Judge (dissenting).

I respectfully dissent from the conclusion reached in the principal opinion.

There can be no doubt that the law, as it pertains to one charged with having aided and abetted another in the commission of a crime, is correctly stated; however, I can not agree that Instruction No. 11A, as given, failed to meet the demands of the rule of law being considered.

The instruction first required the jury to find that Kenneth (the son) "did wilfully and feloniously * * * stab with a knife and kill one Robert Hugh Martin * * *" If this finding was made, the jury was further instructed, "if you further find that the defendant (the mother) * * * was present at the said time and place, and *knowing the unlawful intent* of (the son), did aid, abet, help and assist (the son) in the commission of such act" (emphasis added), defendant should be found guilty of manslaughter.

The sole question is—did Instruction 11A require the jury to find defendant (the mother) acted "intentionally"? I am convinced that it did. After it was found that Kenneth (the son) acted "wilfully and feloniously," the jury also was required to find that the defendant (mother) did aid, abet, help and assist while "knowing the unlawful intent of Kenneth * * *" It

seems not only logical but fair to conclude that the mother (*knowing* of the unlawful intent of the son) did adopt such intent as her own when she continued to actively assist in the commission of the crime. Her doing so provided the basis for the jury to conclude she acted "intentionally." I do not believe that any jury of reasonable men and women could have been misled by the absence of the one word "intentionally" from the instruction as given. The use of that specific word is not ·dictated nor required by the precedents cited.