**People of the State of Illinois, Plaintiff-Appellee, v. Michael J. Weeks, Defendant-Appellant.**

Gen. No. 67–24.

Second District.

September 20, 1967.

Roger W. Hayes, of DeKalb, for appellant.

James G. Boyle, State's Attorney, of Sycamore (Rodney A. Wright, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

A four-count indictment was brought against the defendant, Michael J. Weeks, by the Grand Jury of the County of DeKalb. Counts I and II charged Weeks with attempting to murder Omar Joel on May 12, 1966. Count IV charged him with the attempt to commit murder by making an assault with a deadly weapon upon

Joel but that count was dismissed on defendant's motion prior to trial. Count III states as follows:

"The said Grand Jurors, chosen, selected and sworn, as aforesaid, in and for the County of DeKalb, in the State of Illinois, in the name and by the authority of The People of the State of Illinois, upon their oaths do further present: that Michael J. Weeks late of said County and State aforesaid, on, to-wit: the 12th day of May in the year of our Lord One Thousand Nine Hundred and Sixty-six at and within the said County of DeKalb, in the State of Illinois, aforesaid, Michael J. Weeks committed the offense of Attempt in that he did, with intent to commit the offense of Voluntary Manslaughter, in that he, acting under a sudden and intense passion, resulting from serious provocation by Omar Joel, attempt to shoot Omar Joel with intent to kill or do great bodily harm to the said Omar Joel without lawful justification, in violation of Chapter 38, Section 8-4 of the Illinois Revised Statutes, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the same People of the State of Illinois."

The matter proceeded to trial before a jury on October 17, 1966, and at its conclusion a verdict was returned that found the defendant guilty "of attempt to commit voluntary manslaughter in the manner and form" charged in the indictment. No verdict was returned on either count that charged an attempt to commit murder. Judgment was entered on the verdict and Weeks was sentenced by the court to not less than one year nor more than five years in the Illinois State Penitentiary.

The facts disclosed by the evidence are largely undisputed. Weeks and his wife, Janet, had separated sometime in March of 1966. He made repeated efforts to effect a reconciliation and had frequent "dates" with

his wife during their estrangement. On May 11, 1966, he discovered his wife in the company of another man who he subsequently learned was Omar Joel. He was apparently quite upset over this discovery and was unable to sleep that night. After working a half day on May 12, he drove to Sycamore where he purchased a .22 caliber "short" revolver. On his return from Sycamore, he stopped at a service station where he told the attendant that "he was going to the gas chamber."

At approximately 6:45 p. m., Weeks went to the home of his wife's parents where she resided, showed her the gun and told her either "Omar Joel is dead" or "Omar Joel will be dead." He then went to Joel's apartment, asked Joel "How would you like to die?" and pointed the revolver at him. The two men began to fight, five shots were fired and one bullet lodged in Joel's shoulder. At the sight of Joel's blood, Weeks dropped his gun and helped Joel to his car to take him to the hospital. The police, previously alerted by Janet's father, were outside Joel's apartment building where they apprehended Weeks. Joel recovered within a few days although the bullet has not been removed from his body.

The failure of the jury to return a verdict on the counts that charged the attempt to commit murder amounted to an acquittal on those charges. People v. Newman, 360 Ill 226, 232 and 233, 195 NE 645 (1935); People v. McMurry, 64 Ill App2d 248, 252, 212 NE2d 7 (1965).

Section 8–4(a) of the Criminal Code, Chapter 38, Ill Rev Stats (1965), enumerates the elements of the offense of Attempt as follows:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

Voluntary Manslaughter is described in section 9–2 (a) of the same chapter as:

"A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation . . ."

The defendant argued by motion before trial, during the trial, by post-trial motion and continues to argue in this appeal that, by definition, there can be no such offense as an Attempt to commit a Voluntary Manslaughter. He contends that an Attempt must involve a specific intention to commit the crime whereas Voluntary Manslaughter can only exist where there is no such intention and that therefore an Attempt to commit Voluntary Manslaughter is a logical and legal impossibility.

While there are no Illinois cases on this precise point, the case of Moore v. People, 146 Ill 600, 35 NE 166, by analogy deals with this problem. At page 602, the court stated:

"By section 191 of the Criminal Code of this State manslaughter is defined as follows: 'Manslaughter is the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever.' To reduce the felonious killing of a human being from murder to manslaughter there must be no implication of malice from facts and circumstances proven, and there must be no deliberation whatever. Where a deliberate intent must be found to exist to constitute the act criminal, it is impossible that it should be found to exist without reflection or premeditation. In this case the intent with which the assault was committed is a necessary fact to be shown or implied to constitute the crime. When it appears there was an intent to take life, either express or implied, where the killing would not be excusable or justifiable, and an assault is made with that intent,

then it would be an assault with intent to commit murder. It would follow, therefore, that for one to assault another with intent to commit manslaughter would be a contradiction in terms. The People v. Lilly, 43 Mich 521."

Also, this problem has been resolved in New York. Under New York law manslaughter is defined as homicide "without a design to effect death." New York Penal Law, Consol Laws, c 40, pars 1050, 1052. In the 1964 case of People v. Brown, 21 App Div2d 738, 249 NYS 2d 922, the defendant was indicted for an attempt to commit murder. At the conclusion of the trial the jury was instructed that it could find Brown guilty of any lesser, included crime, including that of "attempted manslaughter." The jury promptly returned a verdict that found Brown guilty of "attempted manslaughter" and judgment was rendered by the trial court on that verdict. That judgment was modified and affirmed by the reviewing court that stated, in part, as follows:

"An attempt to commit a crime consists of (1) the intent to commit the crime; (2) the performance of an act toward the commission and (3) failure to consummate. There must be an intent to commit a specific crime in order to constitute an attempt. (Citation omitted.) An attempt to commit manslaughter is apparently a contradiction because the specific crime of manslaughter involves no intent and, accordingly, an intention to commit a crime whose distinguishing element is lack of intent is logically repugnant."

In February of 1967, New York restated its earlier decision that there could be no such crime as attempted manslaughter in the case of People v. Foster, 19 NY2d 150, 225 NE2d 200, although it refused to reverse the conviction by the trial court for the reason that the de-

fendant had pled guilty to that charge as a compromise with the prosecution.

 The logic of the Moore and the New York decisions and the contentions of the defendant are persuasive. We have previously held that the "intent" required for conviction of the offense of Attempt must be a "specific intent." People v. Paluch, 78 Ill App2d 356, 359, 222 NE2d 508. The act that constitutes the attempt must result from some calculation on the part of the accused. Voluntary Manslaughter, on the other hand, precludes any calculation but can only result from "a sudden and intense passion" that is itself triggered by a "serious provocation." The passion engendered by the provocation must be sufficiently intense to vitiate the normal, self-imposed controls against the criminal act. An act cannot be both the result of a "sudden and intense passion" and a calculated goal of prior deliberation. It is either one or the other but it cannot be both. Consequently, we agree that there can be no such crime as an Attempt to commit a Voluntary Manslaughter.

Since, as we have said, the failure of the jury to return any verdict amounted to an acquittal on the attempt to commit murder charges, the cause will be reversed and not remanded. It is not necessary to consider the other points raised by the defendant in this appeal.

Reversed.

DAVIS, P. J. and MORAN, J., concur.