THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES HILL, Defendant-Appellant.

First District (5th Division)    No. 76-1190

Opinion filed September 30, 1977.

James J. Doherty, Public Defender, of Chicago (Andrea D. Lyon and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Richard J. Barr, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was indicted for murder and, after a bench trial, was found guilty of the lesser included offense of voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2(b)) and was sentenced to a term of 4-12 years. On appeal, he contends (1) that the court erred in finding him guilty of voluntary manslaughter on an accountability theory; and (2) that the State failed to sustain its burden of proof after its evidence raised the issue of self-defense.

Cleora Wilson testified that she lived with her husband, the deceased, on the second floor of a two-flat apartment building. He was employed by the U.S. Postal Service and had been ill and was at home in bed when she heard a knock on the front door, with a man's voice asking for "Tiki." When deceased heard this, he went to a drawer, obtained a pistol, and then went to the door. He held the gun in his right hand and, when he opened the door, she saw defendant push against the door, grab her husband around the neck, and put a gun to his head. A struggle then ensued in the entrance to the apartment, during which both men fell over the bannister to the floor below. As she attempted to get her children out the back door, she heard a voice that she did not recognize say, "Shoot, man, shoot." After this, she heard three gunshots and when she went to the front door, she saw her husband lying wounded in the hallway with the gun still in his hand. The police came and took him to the hospital, where he died several hours later with a gunshot wound to the chest. She saw defendant again in the emergency hospital room, but at no time during the occurrence did she see a third man.

Police officers McCarthy and Olson responded to the shooting and saw defendant lying in an alley near the scene, with a handful of snow covering what appeared to be a gunshot wound. Defendant told the officers he had been robbed and that the assailants got away. He did not answer a request by the police for a description, stating that he wanted to go to the hospital. He was brought to the same emergency room as the deceased and placed on the cot near him. The officer testified that when Mrs. Wilson saw defendant she said, "He is one of them, he is the one that

had the gun and wrestled with my husband in the hallway." After she made this statement, defendant "just turned his eyes away." The police then searched for defendant's weapon in the area of the occurrence, but no gun was recovered.

Police investigator Tuider testified that deceased's gun was fully loaded when it was recovered and, in the emergency room of the hospital when deceased was asked who had shot him, he pointed to defendant in the cot next to him and said. "That is one of the men." Defendant was then informed of his constitutional rights but declined to say anything.

Officer Lewis testified that when he interviewed Mrs. Wilson on the day after the occurrence, she told him and another police officer that she did not see defendant with a gun. When he asked defendant at the hospital whether he would name his partner, defendant refused to do so but later said, "Well, I am not the shooter, I wasn't the shooter." Defendant also said that when he and a friend went to the deceased's apartment to see him about some "bad narcotics," the deceased threatened them with a gun; whereupon, his friend started shooting. Defendant did not testify at trial.

The trial court found that during the course of the struggle the third man shot both defendant and the deceased as they were struggling on the main floor of the building. The court said that, even assuming defendant did not have a weapon, the force used by the shooter was excessive, and because defendant and the shooter went to the deceased's apartment together and defendant asked him for aid during the struggle, there was a sufficient showing of accountability to sustain the conviction for voluntary manslaughter.

OPINION

Defendant's first contention is that the trial court erred in finding him guilty of voluntary manslaughter on a theory of accountability. His position is that because accountability requires a "specific intent to promote or facilitate the commission of the offense" (*People v. Ramirez* (1968), 93 Ill. App. 2d 404, 410, 236 N.E.2d 284, 288) and, relying upon *People v. Weeks* (1967), 86 Ill. App. 2d 480, 485, 230 N.E.2d 12, he argues that one may be accountable only for the commission of specific intent offenses. We cannot agree.

Initially, we note that defendant's reliance upon *Weeks* displays a failure to appreciate the difference between the concepts of attempting to commit a specific crime and of accountability premised upon the promotion or facilitation of the commission of a crime. An attempt to commit an offense is established only where the actor's intent is to commit a specific crime. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4.) Since such an intent requires some deliberation and because voluntary manslaughter, as

defined by section 9—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—2(a)) is the antithesis of calculation or deliberation, the *Weeks* court held "that there can be no such crime as an Attempt to commit a Voluntary Manslaughter." 86 Ill. App. 2d 480, 485, 230 N.E.2d 12, 14.

■■ Concerning accountability, however, the State is deemed to have met its burden of proof that an accused possessed the specific intent to promote or facilitate the commission of the crime where it establishes "beyond a reasonable doubt that defendant shared the criminal intent of the principal, or that there was a community of unlawful purpose." (*People v. Ramirez* (1968), 93 Ill. App. 2d 404, 411, 236 N.E.2d 284, 288.) A community of purpose or common design may come as a result of either prior deliberation that the purpose or design be fulfilled by the commission of a specific offense (*People v. Valentine* (1965), 60 Ill. App. 2d 339, 208 N.E.2d 595) or the spontaneous and combined participation of a group in the perpetration of an offense (*Ritzman v. People* (1884), 110 Ill. 362). A conviction of manslaughter based upon a theory of accountability will be upheld where more than one person engages in an assault and the accused, by his participation, encourages the perpetration of the offense. (*People v. Sink* (1940), 374 Ill. 480, 30 N.E.2d 40; *People v. Barrett* (1913), 261 Ill. 232, 103 N.E. 969; *Ritzman.* See also *Bonardo v. People* (1899), 182 Ill. 411, 55 N.E. 519; *Coates v. People* (1874), 72 Ill. 303.) As the gist of this offense is the joint engagement in making an unlawful assault, the evidence of the common design may be inferred from the conduct of the participants as well as from their spoken words. *Barrett.*

■■ In the light of the foregoing, we must reject defendant's contention that a conviction based upon a theory of accountability may be upheld only where specific intent is an element of the offense. (*Sink.*) In any event, a plain reading of section 9—2(b), the section under which defendant was found accountable, shows that it requires a specific intent. That section provides:

> "A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." (Ill. Rev. Stat. 1973, ch. 38, par. 9—2(b).)

Thus, we believe that the trial court did not err in grounding its finding of guilt upon a theory of accountability.

Defendant's second contention is that the issue of self-defense was raised by the State's evidence, and it failed to prove him guilty beyond a reasonable doubt as to that issue.

■■■ The use of deadly force against another is justifiable only where a person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." (Ill. Rev. Stat. 1973, ch. 38, par. 7—1.) Where evidence of self-defense is introduced either as part of the State's case or interposed by defendant as an affirmative defense, the State must overcome it by proof beyond a reasonable doubt to sustain conviction. (*People v. Pitchford* (1976), 39 Ill. App. 3d 182, 350 N.E.2d 170; *People v. Fleming* (1975), 36 Ill. App. 3d 612, 345 N.E.2d 10.) The reasonableness of an individual's belief that it was necessary to use deadly force to prevent death or great bodily harm raises a question of fact (*People v. Wood* (1974), 24 Ill. App. 3d 15, 320 N.E.2d 32), and a reviewing court will not disturb the determination of the trier of fact on a self-defense issue unless the evidence is so unsatisfactory as to justify a reasonable doubt as to guilt. (*People v. French* (1972), 3 Ill. App. 3d 884, 279 N.E.2d 519.) In this regard, the trier of fact need not accept as true the testimony presented by defendant concerning self-defense; rather, in weighing such evidence, it must consider the probability or improbability of the testimony, the circumstances surrounding the killing, and the testimony of other witnesses. *People v. Holtz* (1974), 19 Ill. App. 3d 781, 313 N.E.2d 234.

In the instant case, defendant argues that he was acting in self-defense in that he was an unarmed man who was facing an armed aggressor and that, under the circumstances, it was reasonable for him to call for help. We note, however, that the trial court found that "the third party did shoot the victim as well as the defendant while they were in the process of carrying on their struggle on the main floor of the building." In a proper case, a third person may be justified in using force against another to defend a friend. (*People v. Johnson* (1972), 4 Ill. App. 3d 249, 280 N.E.2d 764.) However, where a person uses unlawful force in aid of a friend and death results, his acts may constitute voluntary manslaughter. See *People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620; *People v. Hough* (1968), 102 Ill. App. 2d 287, 243 N.E.2d 520.

■■ Here, although the State's evidence introduced the issue of self-defense, it appears that defendant requested the aid of the third man and, because deceased's gun was found to be fully loaded after the occurrence, the trial court concluded that the third man fired the shots— one of which struck the deceased and, under the circumstances, it determined that this use of deadly force was not justified. We find no reason to disturb that finding.

Defendant further contends that he did not have the specific intent to promote the crime as is required by statute. (Ill. Rev. Stat. 1973, ch. 38, par. 5—2; *Ramirez*.) We must disagree, as we believe *Barrett* to be on all fours with the instant case. There, defendants Henry and Edward Barrett

were seated in separate booths in one room of a saloon, where an argument developed between Henry and one Edward Masterson. Thereafter, Henry followed Masterson into an adjoining barroom, motioning to his brother who then followed the pair with a knife exposed in his hand. Once in the barroom, Henry struck Masterson and encouraged him to fight. When Masterson declined in deference to Edward's knife, Masterson's brother, Walter, volunteered to assure fair play by preventing any interference. Edward then approached Walter and stabbed and killed him during an ensuing scuffle. The supreme court upheld Henry's conviction of manslaughter upon a theory of accountability, stating:

> "That Henry knew his brother responded to his signal to accompany him and that he had this weapon in his hand is evident from the fact that Edward Barrett assumed a position in the barroom where he could be easily seen by his brother, and that Edward Masterson, in response to Henry's invitation to fight, said it would be foolish for him to fight him when his brother was standing there with a knife in his hand, but that if someone would prevent Edward Barrett from interfering he would fight him. Edward Barrett was present, participating in the disturbance, at the express invitation of [his brother], who made no protest or objection to the threatened use of the knife, but, on the other hand, proceeded to continue his assault upon Edward Masterson. When the deceased received the fatal thrust from the knife [defendants] were engaged in a common cause and there was perfect concert of action between them. Although Henry Barrett did not strike the blow that killed the deceased, he was present aiding and abetting his brother in the unlawful assault and under the statute was a principal and equally guilty with him. It is immaterial that no word was spoken between [defendants] from the time the trouble began until after the killing, as the evidence of their common design, as well as the aiding and abetting of one by the other, was as effectively and conclusively shown by their actions as though by spoken words." 261 Ill. 232, 238, 103 N.E. 969, 971.

■■ Here, in his statement to the police, defendant asserted that he and another man went to deceased's apartment to complain about "bad narcotics," a venture apparently thought dangerous enough to prompt the other man to carry a gun. Before deceased opened the door, his wife heard the other man going down the stairs, presumably to hide in order to protect himself from the consequences of any altercation or to gain a safer vantage point from which to offer assistance. Most importantly, the record supports the conclusion that defendant exhorted his partner to use his gun, which was fired three times. Subsequently, defendant attempted

to flee and told police the false story that he had been robbed—actions which are inconsistent with self-defense.

■■ Although defendant also complains that Mrs. Wilson's testimony is unworthy of belief, it is well settled that the trier of fact determines the credibility of witnesses. (*People v. Tillis* (1976), 40 Ill. App. 3d 66, 351 N.E.2d 332.) The contradiction of her testimony that defendant had a gun does not render her other testimony unworthy of belief and does not undermine the trial court's findings.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.