THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEPHEN MONIGAN, Defendant-Appellant.

Fifth District    No. 80-105

Opinion filed June 30, 1981.

John H. Reid and Thomas W. Mansfield, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, Stephen L. Monigan, appeals his conviction of murder, entered by the circuit court of St. Clair County after a trial by jury. On appeal defendant contends only that: (1) the trial court abused its discretion in ruling that defendant's prior conviction for voluntary manslaughter could be used to impeach his testimony; and (2) his conviction should be reduced to voluntary manslaughter.

During pretrial proceedings defendant made a motion *in limine* to exclude evidence of his prior conviction for involuntary manslaughter under the doctrine of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268

N.E.2d 695. In *Montgomery* the supreme court effectively adopted proposed Rule 609 of the Federal Rules of Practice and Procedure. That rule restricts the circumstances under which a defendant's prior convictions may be used for impeachment purposes. *Montgomery* held that a prior conviction can be admitted for impeachment purposes only when the sentence for the offense was completed within 10 years and then only if the offense was a felony or a misdemeanor involving dishonesty. Furthermore, even if a prior conviction is admissible under that standard, the trial court is required to determine if its probative value is outweighed by unfair prejudice, in which case the trial court has discretion to exclude evidence of the prior conviction. In making this determination the *Montgomery* court held that the trial court should consider the nature of the prior crime, similarity of past and present crimes, remoteness in time, and the subsequent career of the person concerned. Accord, *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563.

In this case defendant made a pretrial motion *in limine* to preclude use for impeachment of his 1974 conviction of voluntary manslaughter, an offense admittedly similar to the present charge of murder. After defense counsel argued at length that the prejudicial nature of the prior conviction would outweigh its benefit to the State, he asked the court for a ruling. The court responded by stating, "Allow it, allow the State to use it in the event he takes the stand." The court made no further reference to the admissibility of the prior conviction until it denied defendant's motion for a new trial. The motion for new trial alleged that the court erred in denying the motion *in limine*. In rejecting that argument the court stated that it had weighed all of the factors set forth in *Montgomery* and determined that the impeachment value outweighed any prejudicial effect. Because of the peremptory manner with which the court handled the *in limine* ruling, defendant maintains that the trial court failed to weigh the competing interests as required by *Montgomery*. Defendant contends that the court must explicitly articulate its weighing of the relevant factors, citing *People v. Smith* (1979), 73 Ill. App. 3d 577, 392 N.E.2d 347.

We cannot agree with defendant's interpretation of our decision in *Smith*. In that case we noted that the "* * * comments of the trial court make it abundantly clear that the court thought it had no discretion in ruling on the motion, and * * * [t]he court acted peremptorily without weighing and striking a reasonable balance between the interests * * *." (73 Ill. App. 3d 577, 578, 392 N.E.2d 347, 349.) In contrast the trial court here made its ruling only after the parties had argued over the application of *Montgomery*. Under these facts, and in view of the trial court's statement when denying the post-trial motion, there is no reason to

presume that the trial court failed to exercise its discretion, as was the case in *Smith*. For, as this court has recently stated:

> "Under the rule set forth in *Montgomery*, the trial court has broad discretion within certain specified limitations in deciding whether to admit evidence of prior convictions for purposes of impeachment. Illinois cases indicate that there is no requirement for the trial court to articulate all reasons justifying its decision so long as it is readily apparent from the record that there was an adequate basis upon which the trial court exercised its discretion." *People v. Cornes* (1980), 80 Ill. App. 3d 166, 176, 399 N.E.2d 1346, 1353.

■■ Since the record here demonstrates that the trial court properly applied the *Montgomery* standard, we find no error in its denying defendant's *in limine* motion.

The events giving rise to this case occurred on the evening of October 6, 1976, at Blackman's Pepperoom Lounge (Blackman's) in East St. Louis. After an initial trial by jury defendant was convicted of murder, but we reversed, holding it improper for the parties to have stipulated to the admission of polygraph results. (72 Ill. App. 3d 87, 390 N.E.2d 562.) Following remand defendant was again tried by jury and again convicted of murder. However, defendant contends that the testimony at the second trial established at most that he was guilty of voluntary manslaughter rather than murder.

The prosecution called four witnesses, the first of whom was Eula Ike. Ms. Ike testified that at approximately 8 p.m. on the night in question she arrived at Blackman's only to leave a few minutes later with manager Lawrence Drisdel to pick up bartender Kevin Allen. Ike stated that after the three returned to Blackman's they sat at some bar stools for a few minutes and, since the bar was not too busy, she and Allen began dancing. Ike said that when they returned to the seats a few minutes later they found that defendant and his companion, Jerome Lockett, were occupying the stools. At that point the three men became involved in a heated argument. According to Ike, Drisdel approached the men and asked what the disturbance was about, only to have defendant stick a pistol in Drisdel's stomach. Once Drisdel explained that he was a bar employee and only desired to end the disturbance defendant put the gun away and apologized.

According to Ike, as soon as Drisdel left to take an order defendant and Lockett rushed Allen and a fight ensued. Ike stated that when defendant and Lockett pushed Allen against the wall and began hitting him, Allen reached up on the bar and grabbed a beer glass and struck defendant in the face. The blow caused him to bleed. According to Ike, defendant then removed a pistol from his waistband and shot the

unarmed Allen in the stomach. Allen reacted by pushing defendant on the floor, and defendant got up and ran out. Ike indicated that she did not observe Allen having anything to drink, and she stated that she had a clear view of the fracas only a few feet away from the shooting. Ike stated that even though she had never seen defendant prior to the night of the shooting she had no trouble selecting his picture from police photos the next day. This testimony was corroborated by East St. Louis police detective Alfonse Payne, who testified that both Ike and Drisdel identified photographs of defendant.

Dr. H. Frank Holman, formerly a St. Clair County pathologist, testified that he had performed an autopsy on Allen's body and that in his opinion death was caused by a penetrating gunshot wound which had damaged the liver. Dr. Holman stated that he had found definite evidence of a mild to moderate intoxication. According to Dr. Holman, there was no indication that Allen was shot at close range, and the fatal shot might have been fired from a distance of several feet. Holman observed no wounds which would indicate that Allen had been involved in a fight.

The final prosecution witness was Lawrence Drisdel, whose testimony was substantially similar to that given by Eula Ike. Drisdel stated that after he and Ike returned to Blackman's with Allen, Allen got into a heated argument with defendant and Lockett. Drisdel tried to quiet everyone down only to have defendant stick a gun in his stomach. Drisdel said he did, however, eventually restore order and defendant put his gun away. According to Drisdel, Lockett and defendant started to walk out, but then defendant turned around and started fighting with Allen, and foul language was exchanged on both sides. Drisdel said at that point he noticed a gash of unknown origin over defendant's left eye, and he grabbed Lockett in an attempt to break up the fight. Drisdel stated that as he was struggling with Lockett he heard, but did not observe, the fatal shot being fired. Immediately thereafter Drisdel turned to Allen, who had said, "I'm hit," and observed defendant on the floor with a pistol in his hand. Drisdel stated that Ike went to get help prior to the shooting, and although he did not observe her until after the shot was fired, he said he was not paying too much attention to his surroundings until after the shot. Drisdel also stated that he did not observe Allen drink anything that evening.

After Drisdel's testimony, the State rested and defendant attempted to call Jerome Lockett. However, the court announced Lockett would not be called because Lockett's attorney had previously informed the parties and the court that Lockett would plead the Fifth Amendment to all substantive questions.

Although the jury found the evidence presented to be a sufficient basis for convicting defendant of murder, defendant points to undisputed

evidence concerning the facial gash he suffered while fighting with Allen. Defendant contends that this evidence established sufficient provocation as a matter of law to reduce the crime to voluntary manslaughter.

■ It is well settled that voluntary manslaughter is a legal compromise between murder and exoneration. (*People v. Johnson* (1972), 4 Ill. App. 3d 249, 280 N.E.2d 764.) This distinction recognizes that the mental state required for murder is more culpable than the intense provocation which can cause an unreasonable belief that deadly force is necessary. (*People v. Brown* (1974), 19 Ill. App. 3d 757, 312 N.E.2d 789.) The distinction between murder and voluntary manslaughter is thus a recognition of human failings under stress, and the distinction is designed to aid the person who, through no fault of his own, finds himself in a stressful situation where perceptions and judgment may be impaired. Voluntary manslaughter may thus be viewed as an imperfect claim of self-defense (*People v. Zertuche* (1972), 5 Ill. App. 3d 303, 282 N.E.2d 201) and a person seeking to claim self-defense may not be the aggressor. (Ill. Rev. Stat. 1979, ch. 38, par. 7—4(c); *People v. Walker* (1978), 58 Ill. App. 3d 535, 374 N.E.2d 880; *People v. Tillman* (1943), 383 Ill. 560, 50 N.E.2d 751.) In this case the testimony of Ike and Drisdel was sufficient for the jury to find that Allen used force only after defendant started the fight. Under such circumstances defendant cannot claim provocation when he was the initial aggressor and where Allen merely engaged in self-defense.

Affirmed.

HARRISON and WELCH, JJ., concur.