THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTOINE HUDSON, Defendant-Appellant.

Third District   No. 3—86—0741

Opinion filed January 20, 1988.—Rehearing denied March 3, 1988.

Thomas A. Lilien, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The Will County grand jury indicted the defendant, Antoine Hudson, and his brother, Robert Hudson, for murder. The two men were charged with shooting and killing Alfred Mabry. After a bench trial, the defendant was found guilty of the lesser included offense of voluntary manslaughter. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335.) The defendant was sentenced to a term of six years' imprisonment. On appeal, the defendant contends the following: (1) the trial court erred in finding him guilty of manslaughter on an accountability theory; and (2) the trial court abused its discretion by imposing a six-year sentence upon the conviction.

On the morning of March 27, 1986, the defendant's car was burned. The defendant cleaned out the car that morning and took a gun from the car, placing it in his pocket. Robert Hudson came to the defendant's home later that morning. Robert was also carrying a gun. Two friends of the defendant's (Sammy Robinson and Brenda Miller) also came to the defendant's home that day, and around 1:30 p.m., the defendant and Robert left the house with Robinson and Miller in Robinson's car. The defendant and Robert had brought their weapons with them. The defendant claims he normally would not carry his gun; however, he did on this day because he lived in a violent, dangerous neighborhood. As the parties were driving out of the Joliet housing projects, Robert noticed a gray Buick parked along the street. The Buick's driver, Terry McNair, was standing outside the driver's side door of the car talking to a girl in the doorway of a house. As the parties drove by, Robert indicated that the person (Alfred Mabry) in the front passenger seat of the Buick was responsible for the defendant's car being burned. The defendant asked Robinson to pull over, claiming that he wished to speak to Mabry about the burning of the defendant's car. The defendant got out of Robinson's car and walked to the driver's side of McNair's car. As the defendant walked toward the passenger side of the Buick, Mabry got out of the car. The defendant testified that Mabry exited the Buick and warned the defendant not to come any closer, stating, "I killed one nigger and I'll kill another." The defendant contends that as Mabry spoke he was reaching toward his waistband. The defendant testified that Mabry

then produced a pistol and pointed it at the defendant. Upon hearing gunfire from the side of the Buick, the defendant dropped to the ground, drew his weapon and began firing. The defendant fired until his gun was empty. The defendant's shots were not returned by Mabry. A few seconds after the shooting stopped the defendant looked up and saw Mabry's feet by the door of the Buick. The defendant also saw Robert walking around from the side of the Buick. Robert was holding a black revolver in his hand as he approached the defendant. The defendant then left the scene in Robinson's car and returned home. Upon returning home, the defendant found Robert sitting in the defendant's car. Robert had walked home from the scene of Mabry's murder. The defendant gave his gun to Robert and does not know what became of the weapon. The defendant was arrested 20 minutes later while riding in Robinson's car. The car was traveling on Interstate 55, heading for Chicago.

Upon police investigation it was determined that Mabry had been shot four times; each bullet coming from Robert's gun. It was also discovered that Mabry did in fact have a gun in his possession. However, Mabry's gun was not fired, as it was found to be fully loaded.

The defendant and Robert were indicted for the murder of Alfred Mabry. Robert was brought to trial first. The jury found Robert guilty of murder, and the court sentenced him to a term of 20 years' imprisonment. After a bench trial the defendant was convicted of the lesser included offense of voluntary manslaughter. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335.) The defendant was sentenced to a term of six years' imprisonment.

The defendant's first contention is that the trial court erred in finding him guilty of voluntary manslaughter on a theory of accountability.

The Illinois Criminal Code of 1961, section 9—2 (Ill. Rev. Stat. 1985, ch. 38, par. 9—2), provides:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing

he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

■■ In the instant case the defendant argues that he was convicted of voluntary manslaughter based on the imperfect self-defense theory and not convicted of voluntary manslaughter based on provocation. The defendant further argues that because he did not actually perform any act which directly caused Mabry's death, a verdict of guilty of manslaughter by accountability is illogical since the defendant did not possess the requisite mental state for accountability.

Section 5—2 of the Criminal Code states in pertinent part:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5—2 (c).)

The State is deemed to have met its burden of proof that an accused possessed the intent to promote or facilitate the commission of the crime where it establishes beyond a reasonable doubt that the defendant shared the criminal intent of the principal or that there was a community of unlawful purpose. (*People v. Perez* (1985), 108 Ill. 2d 70, 483 N.E.2d 250.) A conviction of manslaughter based upon a theory of accountability will be upheld where more than one person engages in an assault and the accused, by his participation, encourages the perpetration of the offense. (*People v. Hill* (1977), 53 Ill. App 3d 280, 368 N.E.2d 714.) The evidence of the common design may be inferred from the conduct of the participants as well as from their spoken words. *Hill*, 53 Ill. App. 3d 280, 368 N.E.2d 714.

■■ In the instant case, the trial court found the defendant guilty of voluntary manslaughter. Examining the record, the trial court could have and did determine that the defendant and Robert were acting with the intent to commit an illegal act when confronting Mabry. When finding a party guilty under an accountability theory, the criminal acts committed do not have to result from a preconceived plan, provided the evidence indicates involvement on the part of the accused in the spontaneous acts of the group. (*People v. Richardson* (1965), 32 Ill. 2d 472, 207 N.E.2d 478; *People v. Perez* (1985), 108 Ill. 2d 70, 483 N.E.2d 250; see also *People v. Miscichowski* (1986), 143 Ill. App. 3d 646, 493 N.E.2d 135 (where a defendant was convicted of in-

voluntary manslaughter on an accountability theory).) The defendant and Robert got out of Robinson's car armed with handguns. The defendant walked to the passenger side of the car and Robert walked around to the driver's side. As the defendant approached Mabry he heard Mabry shout and thought he saw Mabry reaching for a gun. The defendant heard shots, dropped to the ground and began firing, claiming he was acting in self-defense. Upon police investigation it was determined that Robert had shot Mabry four times. Mabry had not fired his gun. Consequently, because the defendant was involved in the acts resulting in Mabry's death, the trial court's decision is correct.

■ The defendant contends that the trial court found the defendant guilty of the imperfect self-defense theory rather than the provocation form of voluntary manslaughter. The defendant argues that such a determination is logically incorrect because the imperfect self-defense form of voluntary manslaughter requires an intent to kill based upon a mistaken belief of self-defense. Thus, the defendant contends that an individual cannot be convicted of the imperfect self-defense form based upon an accountability theory because a person cannot intend to promote or facilitate a killing by another who believes he is acting justifiably. In support of this proposition the defendant cites the case of *People v. Reagan* (1983), 99 Ill. 2d 238, 457 N.E.2d 1260. In *Reagan*, the defendant had been charged with attempted murder, but at trial, the jury found him guilty of the lesser included offense of voluntary manslaughter. The Illinois Supreme Court determined that, because of the requisite mental state, there could not be an offense of attempted voluntary manslaughter of the imperfect self-defense form. We agree with the conclusion in *Reagan* that such a result would be both legally and logically inconsistent. However, the defendant's reliance on *Reagan* is misplaced as we are not dealing with an attempt in the present case, but rather an accountability. Voluntary manslaughter is not a specific intent crime. (*People v. Reagan* (1983), 99 Ill. 2d 238, 457 N.E.2d 1260.) While the general intent statutes may prevent a party from having an intent to commit the crime as in *Reagan*, there is nothing that prevents a defendant from being accountable for such conduct. Under the accountability provision, a defendant need not possess the mental state required by the underlying specific offense.

> "A conviction of manslaughter based upon a theory of accountability will be upheld where more than one person engages in an assault and the accused, by his participation, encourages the perpetration of the offense. [Citations.] As the gist of this of-

fense is the joint engagement in making an unlawful assault, the evidence of the common design may be inferred from the conduct of the participants as well as from their spoken words." (*People v. Hill* (1977), 53 Ill. App 3d 280, 368 N.E.2d 714, 717.

Thus, to fulfill the intent requirement of voluntary manslaughter under an accountability theory, the defendant only needed to intend the initial act of harming Mabry. Based upon the record, the trial court could have and did determine that the defendant and Robert's actions indicated that they intended to harm Mabry. The trial court found the defendant guilty of voluntary manslaughter based on accountability. The trial court's decision does not specify under which section of the statute the defendant was convicted. However, we do not find a specific citation necessary. Based upon the record, the trial court could have found the defendant guilty of voluntary manslaughter based upon the imperfect self-defense form or based upon provocation.

The defendant's final contention is that the trial court abused its discretion by imposing a six-year sentence upon the conviction for voluntary manslaughter.

■ The imposition of a sentence is a matter of judicial discretion and absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Upon being convicted of voluntary manslaughter the defendant was sentenced to a term of six years' imprisonment. Voluntary manslaughter is a Class 1 felony, carrying a sentence range of 4 to 15 years. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—2(c), 1005—8—1(a)(4).) The sentence imposed is within the range specified in the statute. Based upon the record and the nature of the offense committed, we find no error.

For the foregoing reasons the judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.