THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRUCE PARKER, Defendant-Appellant.

First District (6th Division)  No. 1—87—2413

Opinion filed February 23, 1990.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Walter P. Hehner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant Bruce Parker was convicted of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(2)), felony murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(3)), and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2) for actions against Louis Russell. He was convicted of attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1), armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)), and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2) for actions against Linda Wiggins. After conviction, the court sentenced him to 20 years on the two murder counts and six years on each of the other four counts, the sentences to run concurrently with credit for time served. The court also entered a finding but no judgment for aggravated battery (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), (b)(1)) against Linda Wiggins.

On appeal, Parker raises the issues of: whether the trial court committed reversible error when (1) it found Parker guilty of murder even though he held a reasonable belief that he had acted in self-defense; (2) it found Parker guilty of felony murder based on the theory that he was a participant in a planned armed robbery; (3) it found Parker guilty of attempted murder and armed robbery based on the theory that he was responsible for his codefendant's actions; (4) it restricted Parker's testimony about his state of mind before he killed Russell; (5) it convicted Parker of both murder and felony murder even though both were based on a single act involving a single victim; (6) it convicted Parker of two counts of armed violence even though Parker was also convicted of the underlying felonies of murder and attempted murder; and (7) whether the mittimus for attempted murder must be amended to conform to the actual sentence imposed.

For the reasons given below, we affirm the judgments for murder, attempted murder, and armed robbery, but vacate the findings and judgments for felony murder and both counts of armed violence. We remand the case to the trial court to amend the mittimus for attempted murder. We also vacate the finding of aggravated battery.

This appeal involves convictions for actions that occurred on February 7, 1986. On that date Parker went to the home of William Lang at 726 N. Austin, Oak Park, to buy one-sixteenth of an ounce of cocaine. About two hours later, Linda Wiggins and a companion, Louis "Junior" Russell, arrived with the cocaine. Accounts differ as to the details about what happened next, but everyone agrees that Parker picked up a gun and shot Russell in the head at least once. Then Lang used the gun to shoot Wiggins three times.

In defense to the murder charge, Parker claimed self-defense or, in the alternative, action in the unreasonable belief that self-defense was necessary, which would reduce the charge to voluntary manslaughter. Parker also presented four character witnesses who testified about his dependability on the job and his reputation for being truthful and law abiding.

Parker himself testified that he arrived at Lang's sometime before 6 p.m. Lang did not have the drugs but expected delivery soon. Parker agreed to wait because he was planning a party and wanted to have cocaine available for his friends. He also testified that the idea of waiting made him "nervous." When Parker began to explain why he was nervous, the State objected, and the trial court sustained this objection. Parker continued his testimony, stating that he had only bought from Lang once before.

Finally, a woman arrived accompanied by a man. Lang introduced them to Parker as Linda Wiggins and a friend. The man kept his hand in his pocket and refused to shake hands with Parker. Parker noticed that Wiggins was sweating and looked "a little nervous." Lang then led the party to his dining room. There, Parker stood while Wiggins and the man sat. The man sat down by moving his chair with his feet and still did not take his hand from his pocket. Parker noticed a gun on the bar nearby. When Wiggins asked for water, Parker got her a glass. After that, Lang took a sample of drugs into another room and returned to report it "wasn't coming back too well." Parker assumed the comment meant that the drugs did not meet Lang's expectation for quality. Wiggins told Lang to get a scale. Parker then said he wanted to cancel his small order. Wiggins objected that if Lang cancelled the main order from her, something would happen to him.

At this point in the testimony, the State raised a hearsay objection. The court allowed Parker to continue, however, on the grounds that he was testifying about his state of mind prior to the shooting of Louis Russell.

Parker testified further that Lang left the room, possibly to get a scale. Parker called after Lang: "Well, I don't want any of it and I'm not going to buy it." Wiggins looked at Russell and said, "Fuck that, Junior." Then Russell, who had been sitting the entire time with one hand in his pocket, started to stand, grabbed the bottom of his jacket with his free hand, and began to pull his hand out of his pocket. At this point in testimony, the following was said:

> "MR. PETERS [Defense Counsel]: And what did you think was about to happen[?]

MS. CALLUM [Assistant State's Attorney]: Objection, your Honor.

THE COURT: Sustained.

Q. What did you do then?

A. Well when he jumped up and grabbed the bottom of his coat I had thought he had a gun out of the pocket because he never removed his hand from the pocket. I snatched the gun off the bar and I fired it."

Parker testified further that Lang ran over and said, "You going to have to finish him now." Parker replied, "I can't do that." So Lang took the gun, shot Russell in the head and shot Wiggins three times. Parker left the room and waited in the apartment for about 20 minutes. Next he went out, got his van, and pulled up to the stairwell. He could see Lang and another man bringing Russell's body down the stairs. At that point, Parker saw a police officer farther down the alley. So Parker slid open the van door and fled on foot. The officer followed and arrested him.

Linda Wiggins testified that she was the friend of a cocaine dealer who had authorized her to sell for him in his absence. About 4:45 that day, Wiggins was at home freebasing when she got a call from Lang on her friend's beeper. Lang wanted to buy one ounce for $1,300 or $1,500. Wiggins told him the price would be $1,800. Lang stated he would go to the bank for more money and call her again when he got back. She continued using cocaine until 6 or 6:30. During this time, Louis Russell arrived. He was a retarded man and not a drug user. Wiggins took Russell with her to pick up the drugs from the dealer's apartment and then proceeded to Lang's.

Wiggins testified further that she and Russell sat in the Lang dining room while Lang left the room. Lang returned to say he was having trouble with his scale; but, he wanted Wiggins to "be cool" and remain seated. Wiggins and Russell remained in the dining room, and each smoked a cigarette. Parker went to get Wiggins some water. After he returned, he stood by the bar and pointed the gun at Russell's head. According to Wiggins, Russell was still smoking a cigarette when Parker shot him in the head at least once.

Lang returned immediately. Then Parker passed him the gun, and he shot Wiggins twice. Wiggins fell to the floor facedown. She heard someone empty her purse on the table. Two sets of feet were at the table, but Wiggins did not know which man actually emptied her purse. A voice said, "We got about two or three ounces of cocaine," and "Go to the store and get the pipe." Shortly after that Lang turned Wiggins' body over and said, "[T]his bitch ain't dead.

Turn up the music." According to Wiggins, Parker "went over and cut up the music." Then Lang shot Wiggins in the head. Both men left the room. A few minutes later, two people returned. Wiggins had her eyes closed, but recognized the two people as Parker and Lang. One said, "Man, this bitch ain't dead yet." Wiggins recognized Lang's voice in reply: "The bitch is going to die. I shot her in the head." Someone wiped blood from the floor and placed a towel under Wiggins' head. Then Wiggins got up and jumped out the second-story window. She did not take her purse, the cocaine, or any other belongings with her. After landing, Wiggins crossed Austin Avenue into Chicago and found someone to call the police.

Through stipulations and testimony, the State presented the following facts. Parker had no drugs or weapons when arrested. His open van was parked in the alley behind Lang's apartment, about two to four feet from Russell's body. In the Lang apartment, the police found two guns, ammunition, drugs, razors, and a bong for smoking drugs. Lang was arrested in the apartment of a neighbor on the first floor. At that time, he had drugs with him. Later the neighbor called the police to say she had found a purse, which she had seen Lang bring into the apartment, and a beeper. Both were identified as belonging to Wiggins. An autopsy of Russell revealed that he died from "multiple gunshot wounds" after two shots to the head, either of which could have killed him.

The State also presented the testimony of Assistant State's Attorney Colin Simpson. He spoke to Parker at about 2:45 a.m. on February 8, 1986. In that conversation, Parker stated there were two guns on the bar, not one as he testified in court. When Simpson asked Parker if he had money to buy the drugs, Parker admitted that he did not have the money; Lang had money, but not nearly enough to buy an ounce of cocaine. When Simpson asked if Parker and Lang had planned "a drug ripoff," Parker answered yes. On cross-examination, Simpson admitted that the remarks about the "drug ripoff" were not in his typed notes on the conversation. Furthermore, Oak Park police detective Zielke, who was present during the interview, did not recall the remarks about a ripoff or have any reference to these remarks in his notes.

At the end of the trial, the court reviewed the evidence and found:

> "I have substantial doubts that the defendants between them had sufficient funds to make the purchase. *** But I don't believe that they had that kind of money.
>
> Now, Linda Wiggins didn't say anything about Louis Russell

standing up. Mr. Parker testified that Louis Russell had his hand in his pocket from the time he entered the apartment, that he stood up with his hands still in his pockets at which time Mr. Parker believed that Louis Russell had a weapon and shot in self-defense.

Linda Wiggins testified that the boy had a speech defect. I don't know whether he talked to Mr. Parker or Mr. Lang at any time. She said he was slow, that he went to a special school. \*\*\* [T]o adopt the theory of self-defense, the Court would have to conclude that this young man with those physical handicaps gave the impression that he was standing up or even if he was not standing up, that he was with his hand in his pocket he was going to pull a weapon.

\*\*\* [F]or a Court to believe that he posed such a threat I think goes beyond what the evidence in this case would indicate.

I have to conclude that this was not a case of voluntary manslaughter. This was not a case of self-defense. This was a case of murder and it was murder in the course of a felony."

### A

█ The first four issues involve the sufficiency of evidence. For such issues, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.) Furthermore, "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as the weigher of the evidence is preserved through a legal conclusion that upon judicial review *all the evidence* is to be considered in the light most favorable to the prosecution." (Emphasis in original.) *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.

### I

█ Parker first contends that this court must reverse his conviction for murder because the State failed to prove he acted without a reasonable belief that he needed to shoot Russell in self-defense. In the alternative, Parker argues that even an unreasonable belief in the need for self-defense would reduce the charge to voluntary man-

slaughter. Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).

The Illinois statute on self-defense states:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill. Rev. Stat. 1987, ch. 38, par. 7—1.)

(See also *People v. White* (1980), 87 Ill. App. 3d 321, 322-23, 409 N.E.2d 73, 74.) "[Self-defense] is an affirmative defense." (Ill. Rev. Stat. 1987, ch. 38, par. 7—14.) When a defendant raises an affirmative defense, the "State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue." Ill. Rev. Stat. 1987, ch. 38, par. 3—2(b).

■ Killing in self-defense is justified where the following elements are present: (1) force has been threatened against a person; (2) the threatened person is not an aggressor; (3) the danger of harm is imminent; (4) the force threatened is unlawful; and (5) the defendant must reasonably believe that danger exists, countering it requires force, and the force required is the kind and amount of force used by defendant. (*People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1021-22, 415 N.E.2d 499, 501.) A defendant may act in self-defense, even if his belief is erroneous, as long as the error is reasonable. *White*, 87 Ill. App. 3d at 323, 409 N.E.2d at 74.

■ In the alternative, Parker argues that if he held an unreasonable belief in the need for self-defense, then the appropriate charge would be voluntary manslaughter. The Illinois statute at the time of the offense provided:

"(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).)

Thus, voluntary manslaughter may be viewed as an imperfect claim of self-defense. (*People v. Monigan* (1981), 97 Ill. App. 3d 885, 889, 423 N.E.2d 546, 549.) If the defendant did have a belief in the need for self-defense, but that belief was an unreasonable one, then the charge should be reduced from murder to voluntary manslaughter.

*People v. O'Neal* (1984), 104 Ill. 2d 399, 405-06, 472 N.E.2d 441, 443-44.

■ The testimony against Parker on this issue came from Linda Wiggins. Parker cites cases to the effect that the testimony of addicts must be scrutinized with caution. (See, *e.g.*, *People v. Rollins* (1982), 108 Ill. App. 3d 480, 494, 438 N.E.2d 1322, 1328.) Nonetheless, issues concerning the credibility of witnesses are for the trier of fact to decide. *People v. Mosley* (1979), 68 Ill. App. 3d 721, 725, 386 N.E.2d 545, 548.

Parker testified that during the drug deal he, Wiggins and Russell sat in the dining room. Wiggins was sweating and looked nervous. Russell kept one hand in his jacket pocket and even refused to shake hands. After Lang raised questions about the quality of the drugs, Wiggins objected that Lang would have to buy or something would happen to him. When Parker declared that he no longer wanted to buy, Wiggins said to her friend, "Fuck that, Junior." According to Parker, Russell then started to stand, grabbed the bottom of his jacket, and began to pull out his hand. Parker thought that Russell had a gun. He grabbed a gun from the nearby bar and shot Russell in the head. Wiggins testified that she and Russell sat in the dining room smoking cigarettes. Lang told her to "be cool" and remain seated. She asked Parker for a glass of water. Shortly after Parker returned with the water, he pointed a gun at Russell's head. Russell was still smoking and seated in a chair. Parker fired one or two shots at Russell.

In this case, the trier of fact had to evaluate the credibility of two witnesses with contradictory testimony. The court knew that Wiggins had been freebasing cocaine on the day of the shooting. Nonetheless, the court weighed the credibility of both witnesses and believed Wiggins. The court also acknowledged that a handicapped man like Russell might have a peculiar habit like keeping his hand in his pocket. But without evidence of a more substantial threat, the court would not accept this action as a basis for a reasonable belief in the need for self-defense.

The court did not find that Parker had even an unreasonable belief in the need for self-defense which would reduce the charge to voluntary manslaughter.

In sum, the evidence, viewed in the light most favorable to the prosecution, does allow a rational trier of fact to find that Parker did not act with a belief, reasonable or unreasonable, in the need for self-defense. Therefore, we affirm the trial court's finding of murder against Parker for the shooting of Louis Russell.

## II

Parker contends as a second issue that this court must reverse his conviction for felony murder because the State failed to prove he participated with Lang in the armed robbery of Wiggins. We need not consider this issue, however, because we vacate the conviction for felony murder for reasons discussed below in issue five.

## III

■ In Parker's third issue, he claims that this court must reverse his conviction for attempted murder and armed robbery because the State did not present sufficient evidence that he was accountable for Lang's actions. Under Illinois statute:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).

Defendant notes that intent is one of the elements of this offense. (*People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 377-78, 240 N.E.2d 150, 154.) Thus, Parker argues, he cannot be accountable for Lang's subsequent actions because Lang took the gun away after Parker refused to shoot Russell a second time. The State argues that it has met its burden of showing intent if it showed either a common design or a community of purpose. (*People v. Hill* (1977), 53 Ill. App. 3d 280, 284, 368 N.E.2d 714, 717.) Accountability will be upheld when one person engaged in an assault and the other encouraged it by his participation. *Hill*, 53 Ill. App. 3d at 284, 368 N.E.2d at 717.

Parker admitted a common plan to rob Wiggins during his conversation with Assistant State's Attorney Simpson. Wiggins testified that two people opened her purse after she had been shot. One said, "We got about two or three ounces of cocaine" and "Go to the store and get the pipe." Later Lang turned Wiggins' body over and said, "[T]his bitch ain't dead. Turn up the music." After Parker increased the volume, Lang shot Wiggins in the head.

In sum, a rational trier of fact could find that Parker intended to help Lang during the drug robbery and shooting of Linda Wiggins. Therefore, we affirm Parker's conviction for attempted murder and armed robbery.

## IV

■ As the fourth issue, Parker argues that this court must reverse his conviction for murder because the court sustained two objections while he was testifying about his state of mind. Under Illinois statute, a defendant who pleads self-defense to a murder charge must claim that he had a reasonable belief that deadly force was necessary. (Ill. Rev. Stat. 1987, ch. 38, par. 7—1.) In addition, a defendant who pleads guilty to voluntary manslaughter must claim an unreasonable belief in the need for deadly force. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).) (See the discussion under issue one above.) Thus, Parker's state of mind was a material issue for both his affirmative defense of self-defense and the alternative defense that he only committed voluntary manslaughter.

Parker argues that where the intention, motive or belief of a defendant is an issue in a criminal case, courts must allow the accused to testify on that point. (*People v. Biella* (1940), 374 Ill. 87, 89, 28 N.E.2d 111, 112.) When self-defense is an element in an issue in a murder case, failing to allow the defendant to testify about his state of mind is reversible error if the excluded testimony is essential to the defendant's claim. *People v. Kline* (1980), 90 Ill. App. 3d 1008, 1014-15, 414 N.E.2d 141, 146.

The State does not contest the admissibility of evidence about Parker's state of mind, but contends that such evidence was presented at trial in spite of the two exclusions at issue here.

■ Although we find error, we consider it harmless and not a basis for reversal. Harmless error is a "technical violation of a rule of evidence not considered a sufficient basis for reversal because the admission or exclusion did not affect a substantial right of a party." (*People v. Demeron* (1987), 153 Ill. App. 3d 440, 446, 505 N.E.2d 1222, 1226.) This kind of error may be disregarded. (107 Ill. 2d R. 615(a).) One test for harmless error is "whether the evidence is cumulative or merely duplicates properly admitted evidence." *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, 429 N.E.2d 526, 528.

■ The first exclusion barred Parker from explaining why he felt "nervous" at the prospect of waiting for a drug dealer in Lang's apartment. However, even though Parker was not allowed to detail the reasons for his nervousness, the fact that he was nervous did get into the record. The second occurred when Parker described the scene in Lang's dining room just before he shot Russell. The court would not let him answer the question, "What did you think was about to happen?" However, the crucial content of that answer appeared in the answer to the next question when Parker explained

that he thought Russell was removing a gun from his pocket. Furthermore, the court had allowed Parker to describe the conversation between himself, Wiggins, and Lang just prior to the shooting. When the State raised a hearsay objection, the court overruled it on the grounds that Parker was really testifying about his state of mind prior to shooting Russell.

In sum, the court incorrectly excluded answers to two specific questions about Parker's state of mind. Nonetheless, since the court did allow Parker to give both direct and circumstantial evidence on this issue, the excluded evidence was merely cumulative. Furthermore, the court showed its awareness of this issue when it allowed evidence in over the State's hearsay objection specifically because that evidence was indicative of Parker's state of mind. Thus, the two exclusions did not deprive Parker of a fair trial and constitute only harmless error.

### B

The State concedes that defendant should prevail on the last three issues.

### V

Parker contends as a fifth issue that this court must vacate his conviction for either murder or felony murder since he was convicted of both crimes for the same acts against the same victim.

■■ Parker was convicted on two counts of murder, under sections 9—1(a)(2) and 9—1(a)(3), respectively. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(2), (a)(3).) In cases where there was only one death but two or more convictions for murder, a reviewing court must vacate all but one conviction and impose the penalty for the most serious one. (*People v. Mack* (1984), 105 Ill. 2d 103, 137, 473 N.E.2d 880, 898.) If a vacated conviction will not have a bearing on the sentence, it is not necessary to remand for resentencing. See, *e.g.*, *People v. Einstein* (1982), 106 Ill. App. 3d 526, 536-37, 435 N.E.2d 1257, 1265.

In this case, the State has asked this court to vacate the felony murder, but offers no reason for this choice. The rule under *Mack* requires the court to impose the penalty for the more serious offense. (*Mack*, 105 Ill. 2d at 137, 473 N.E.2d at 898.) Under Illinois statute, the sentence is the same for either murder or felony murder. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(1).) Like the case here, *Mack* involved murder charges with the same statutory penalty. The *Mack* court affirmed the conviction for intentionally and knowingly killing

the victim because the intent for that murder involved a more culpable mental state than either shooting with the probability of causing a death or shooting in the course of an armed robbery. *Mack*, 105 Ill. 2d at 137, 473 N.E.2d at 898.

▬▬ In this case, Parker shot Russell with the knowledge that he might cause death or great bodily harm. That action required a more culpable mental state relative to the killing than simply being part of a felony in the course of which a victim might be killed. Therefore, we vacate the conviction for felony murder. Furthermore, since Parker's 20-year sentence was the minimum for either conviction (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(1)(a)), we need not remand the cause for resentencing.

## VI

▬▬ Parker contends as his sixth issue that this court must vacate his conviction for armed violence because a trial court may not impose multiple convictions for both armed violence and the underlying felony where a single physical act is the basis for both charges. (*People v. Payne* (1983), 98 Ill. 2d 38, 54-55, 456 N.E.2d 44, 48; *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 478-79.) If found guilty of both, a defendant can be convicted and sentenced only for the more serious charge. *People v. Smith* (1984), 127 Ill. App. 3d 622, 635, 469 N.E.2d 634, 645.

The trial court convicted Parker on two counts of armed violence based on the same acts upon which it also convicted him of murder and attempted murder. Therefore, the convictions for armed violence are vacated.

## VII

▬▬ As his seventh issue, Parker claims that the mittimus for attempted murder must be amended so it will conform to the sentence imposed by the trial court. (See, *e.g.*, *People v. Tackett* (1986), 150 Ill. App. 3d 406, 420-21, 501 N.E.2d 891, 901.) As the sentence imposed by the trial court was six years, the mittimus should be amended accordingly.

## C

For these reasons, we affirm the judgment of the circuit court of Cook County on the convictions for murder, attempted murder, and armed robbery. We vacate the convictions for felony murder and both counts of armed violence. Although this was not addressed by the parties, we vacate the finding for aggravated battery, which was part

of the underlying felony of attempted murder. Finally, we remand the case to the trial court with directions to amend the mittimus on the attempted murder.

Judgment affirmed in part, vacated in part, and the case remanded for action consistent with our findings.

Affirmed in part; vacated in part and remanded.

McNAMARA and EGAN, JJ., concur.