NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240987

NOS. 4-24-0987, 4-24-0988 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 1, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.L. and M.D., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|       Petitioner-Appellee, | ) | Nos. 22JA340 |
|       v. | ) |      22JA341 |
| Florence W., | ) | |
|       Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights.

¶ 2    In May 2024, the State filed petitions to terminate the parental rights of respondent, Florence W., to her minor children, D.L. (born December 2018) and M.D. (born November 2010). Following the fitness and best interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. (The parental rights of the minors' respective fathers were terminated as well; however, the fathers are not parties to this appeal.) Respondent timely filed a notice of appeal, and counsel was appointed to represent her. Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending there are no

meritorious issues of procedure or substance to be raised on appeal which would warrant relief. We agree, grant counsel's motion to withdraw, and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        In July 2022, the State filed separate neglect petitions for the minors pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act), contending the minors' environment was injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2022)). The petitions alleged: respondent's mental health issues prevented her from properly parenting the minors (count I) and there was domestic violence in the home (count II). Following a hearing, the trial court entered a temporary custody order placing the minors in the custody of the Illinois Department of Children and Family Services (DCFS).

¶ 5        In February 2023, the trial court entered an adjudicatory order finding the State had met its burden on count I but had not met its burden on count II of the neglect petition. The court entered an order finding the minors neglected. In March 2023, the court entered a dispositional order making the minors wards of the court after finding respondent unfit or unwilling for reasons other than financial circumstances to properly care for the minors. Custody and guardianship of the minors was placed with DCFS, and respondent was ordered to cooperate with all directives from DCFS.

¶ 6        In May 2024, the State filed petitions to terminate respondent's parental rights, alleging respondent had (1) failed to maintain a reasonable degree of interest, concern or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)), (2) failed to make reasonable efforts to correct the conditions that caused the minors to be removed during a nine-month period after adjudication of neglect (*id.* 50/1(D)(m)(ii), and (3) failed to make reasonable progress toward the return home of the minors during a nine-month period after

adjudication of neglect (*id.*). The relevant nine-month periods were defined as February 22, 2023, to November 22, 2023, and/or July 23, 2023, to April 23, 2024.

¶ 7                                      A. Fitness Hearing

¶ 8             On June 7, 2024, the trial court held a hearing on the State's petitions to terminate respondent's parental rights. Respondent was not present and her counsel requested a continuance. Respondent's counsel stated respondent often arrived "15 to 20 minutes late." The court denied counsel's request stating respondent was aware of the date and time of the hearing. We note the record shows that on May 24, 2024, respondent was arraigned on the State's petitions to terminate her parental rights wherein the court set hearing dates for June 7, 2024, and July 15, 2024, on the State's petitions. Respondent verbally acknowledged confirmation of the hearing dates.

¶ 9             Without objection, the trial court took judicial notice of the court file. Several family service plans, two DCFS indicated packets, and the integrated assessment were admitted into evidence without objection. Meliza Lester testified on behalf of the State. Lester stated she was the only caseworker assigned to respondent's case. Respondent had multiple contacts with "medical staff and police," as well as DCFS investigators, wherein respondent "appeared to be either under the influence or *** in the midst of some mental health crisis." Respondent inconsistently communicated with Lester. Respondent was ordered to complete a mental health evaluation, individual counseling, domestic violence victim services, and parenting education. Lester noted respondent had completed numerous mental health evaluations. However, she did not complete individual counseling. Lester stated one of the minors disclosed respondent had been "punched many times," leading to concerns about respondent continuing in abusive relationships. Respondent had not completed domestic violence victim services. Respondent was arrested in Chicago regarding an order of protection case there. Respondent had not completed a parenting

education course. She had not consistently visited with the minors. However, when respondent attended visits with the minors, she would bring them toys and food.

¶ 10　　　　Lester expressed concerns about respondent's ability to "emotionally regulate" and her "paranoia." Lester recalled an incident from January or February of 2024 when she was speaking with respondent by phone. Respondent accused Lester of abusing the minors and stated, "20 people are getting together to kidnap [the minors], and [Lester] was brainwashing [the minors]." Lester advised against unsupervised or overnight visitation, stating respondent was unable to place the minors needs above her own.

¶ 11　　　　On cross-examination, Lester was asked about respondent's behavior during visitations with the minors. Lester responded:

> "It was not always uniform. There were times where she was very
> engaged and she would bring crafts and do them with the kids. And
> then there were times where she was pacing, on the phone, talking
> about her children being sexually abused, physically abused. There
> were times she didn't show up. She would bring people. It varied."

While respondent did not complete any ordered services, Lester noted she had made efforts. Lester believed respondent's failure to complete ordered services was due to her mental illness.

¶ 12　　　　After the State rested, respondent's counsel renewed a motion to continue the proceedings because respondent had not arrived. The trial court stated:

> "I'm going to deny your request for a continuance. [Respondent]
> was present in court when these court hearing dates were scheduled.
> I've not been informed by you or Miss Lester or any other method
> that she has requested a continuance or communicated any medical

- 4 -

issues, transportation issue, anything that would warrant further

consideration of a continuance for good cause. So I will deny your

request for a continuance."

Respondent's counsel noted because of respondent's absence, she would not be able to testify on her own behalf.

¶ 13    The trial court took the matter under advisement and the proceedings were continued for a decision.

¶ 14    The matter resumed on July 15, 2024. The trial court noted that the integrated assessment that had been admitted without objection at the previous hearing was an incomplete document missing every other page. The parties agreed to permit the State to resubmit the complete exhibit without objection. Respondent failed to appear again, and her counsel again requested a continuance. Lester informed the court that she had attempted to contact respondent and respondent's counselors regarding the court date but had no success reaching respondent. The court denied counsel's continuance request stating respondent was aware of the court date because she was present when it was previously scheduled.

¶ 15    The trial court found the State had met its burden by clear and convincing evidence on all three counts. Specifically, the court noted respondent frequently missed visits with the minors. Her last visit was in January 2024, and the court noted numerous missed visits in 2022 and 2023. Respondent failed to progress to unsupervised or overnight visits. Although respondent had denied needing mental health services, several mental health assessments indicated she needed outpatient mental health treatment. The court noted Lester's testimony was reliable and consistent and supported by the admitted evidence. Respondent failed to complete necessary services, which

demonstrated her failure to make reasonable progress. The matter immediately proceeded to the best interest hearing.

¶ 16                                                    B. Best Interest Hearing

¶ 17          Respondent's counsel again renewed a request to continue the matter, which the trial court denied. The court took judicial notice of the evidence and testimony from the fitness hearing without objection. The court took judicial notice of a court report prepared by Lester without objection.

¶ 18          Lester testified the minors had been placed together in a traditional home since October 2022. At the time of the hearing, D.L. was 5 years old and M.D. was 13 years old. D.L. requested to stay in her current placement, whereas M.D. preferred to "go back home with her mother, but if that can't happen," she desired to stay in her current placement. The minors' current foster parents provided appropriate food, clothing, and shelter. The minors were bonded with the foster parents. D.L. called the foster parents "mom and dad." Lester noted the foster mother had helped the minors "cope with things" and noted how respondent "was distant and more explosive," which made the minors appear "on edge a lot [causing them to have] issues coping with their emotions at the time." The minors had community and school ties. They had a group of friends and played different sports. The minors were also bonded with their foster brothers. Lester believed the foster parents were capable of providing for the minors, who were developmentally "on track." The foster parents wished to adopt the minors. Lester recommended the parental rights of respondent be terminated to permit them to be adopted.

¶ 19          Following the State's evidence, respondent's counsel again renewed a continuance request, which the trial court denied.

¶ 20    The trial court noted it had considered the statutory best interest factors. The court commented the minors were bonded in their current placement with friends and had an active involvement in sports. The foster parents had provided a "very stable, very supportive, very consistent" home. Respondent's visitations were "extremely inconsistent." Applying "all of [the best interest] factors," the court terminated respondent's parental rights.

¶ 21    Respondent timely filed a notice of appeal, and the trial court appointed counsel to represent her. Appellate counsel filed a motion to withdraw pursuant to *Anders* and a supporting brief providing a statement of facts, a list of potential issues, and arguments as to why those issues lack arguable merit. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8 (finding *Anders* applies when counsel seeks to withdraw from representation on direct appeal from orders affecting parental rights under the Juvenile Court Act). Appellate counsel provided proof of service of his motion and a memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to respond.

¶ 22                        II. ANALYSIS

¶ 23    Appellate counsel seeks to withdraw as counsel, contending there are no meritorious claims for review. Counsel indicated he considered whether (1) the State failed to show respondent did not make reasonable efforts toward reunification during the relevant nine-month periods, (2) the State failed to show respondent did not make reasonable progress towards reunification during the relevant nine-month periods, (3) the State failed to prove respondent did not maintain a reasonable degree of interest, concern, or responsibility for the minors, (4) the State failed to prove it was in the best interests of the minors to terminate respondent's parental rights, (5) the trial court abused its discretion when it denied respondent's counsel's motions to continue at the fitness and best interest hearings, and (6) the court committed

plain error when it admitted a revised exhibit from the State following the close of proofs. Appellate counsel determined the preceding arguments would be frivolous and without merit. After reviewing the record, we agree with counsel and conclude there are no meritorious arguments to be considered on appeal.

¶ 24                    A. Findings of Parental Unfitness

¶ 25        Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act, a parent may be found unfit if she fails "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2022). Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007). This court has explained reasonable progress exists when a trial court

> "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

We have also emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *L.L.S.*, 218 Ill. App. 3d at 461). "A trial court's determination

that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 26　　　The trial court found the State established respondent's unfitness by clear and convincing evidence on multiple grounds. The court noted respondent's inconsistent visitation record with the minors. At the time of the fitness hearing in June 2024, respondent had not visited the minors since January 2024. She had not progressed in her visits with the minors and had not completed court-ordered services.

¶ 27　　　Based on the evidence presented, we agree with appellate counsel any argument the trial court's finding of unfitness was against the manifest weight of the evidence would be meritless. The court's determination respondent failed to make reasonable progress toward the minors' return to her care during the relevant nine-month periods is supported by the record and not against the manifest weight of the evidence. Because we need only find one of the alleged grounds of unfitness is supported by clear and convincing evidence, we need not address the other two grounds as alleged in the State's petition. See *Gwynne P.*, 215 Ill. 2d at 349. ("A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence.").

¶ 28　　　　　　　　　　　B. Best Interest Determination

¶ 29　　　After a trial court finds a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The trial court's best interest determination will not be reversed unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest

determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 30　　　　At the best interest hearing, the State must prove by a preponderance of the evidence termination of parental rights is in the child's best interest. See *D.T.*, 212 Ill. 2d at 367. The trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act. See 705 ILCS 405/1-3(4.05) (West 2022). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. These statutory factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

¶ 31　　　　In this case, the evidence demonstrated the minors' needs were being met by their current foster placement and they had developed a bond with their foster parents. The minors expressed an interest in remaining with the foster parents, who were willing to adopt them.

Furthermore, the minors remaining in their current placement avoided harm to them and provided stability and permanence.

¶ 32 Based on this evidence, we agree with appellate counsel any argument it was not in the minors' best interest to terminate respondent's parental rights would be meritless. Further, the trial court's best interest findings were based on an appropriate consideration of the statutory factors. Accordingly, we conclude the court's best interest determination was not against the manifest weight of the evidence.

¶ 33 C. Denial of Motion to Continue

¶ 34 Appellate counsel next considered whether the trial court's denial of respondent's counsel's continuance requests was error. We agree with counsel that no error occurred.

¶ 35 A respondent does not have an absolute right to a continuance. *In re S.W.*, 2015 IL App (3d) 140981, ¶ 31. Rather, continuances should only be granted where good cause is shown. Ill. S. Ct. R. 901(c) (eff. July 1, 2018). The decision to grant or deny a motion for a continuance is left to the sound discretion of the trial court. *S.W.*, 2015 IL App (3d) 140981, ¶ 31. This court will not reverse the trial court's denial of a motion to continue absent a showing the court abused its discretion such that no reasonable person would agree with the court's decision. *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011). Furthermore, "the denial of a request for a continuance is not a ground for reversal unless the complaining party has been prejudiced by the denial." *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36.

¶ 36 In this case, there was simply no reason provided for respondent's failure to appear for either the fitness or best interest hearings. Respondent was previously aware of the hearing dates. The trial court explicitly noted respondent had not provided any good cause reason

to warrant a continuance. Accordingly, we find the trial court did not err when denying respondent's counsel's motions for a continuance.

¶ 37                    D. Admission of Exhibit After Close of Proofs

¶ 38        Finally, appellate counsel considered whether it was plain error for the trial court to admit a revised exhibit from the State following the close of proofs. Counsel noted the court discovered the exhibit was missing every other page. The court then *sua sponte* emailed all of the parties involved and received indication there was no objection to the State resubmitting the exhibit in its complete form. Counsel noted the State had already rested thus closing the period for proofs to be submitted. Counsel also noted respondent did not object to the resubmission of the exhibit and thus waived any purported error.

¶ 39        In criminal cases, forfeited claims may be reviewed under the plain-error doctrine "where a clear or obvious error occurred" and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. The plain-error doctrine can be applied in abuse and neglect cases. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). "The first step of plain-error review is to determine whether error occurred," and "[t]he burden of persuasion rests with the defendant." *People v. Curry*, 2013 IL App (4th) 120724, ¶ 62.

¶ 40        We start by noting the evidence at issue in the integrated assessment was not new but rather duplicative of what was previously accounted for in the court record from, *inter alia*, the various family service plans. Thus, even if we assumed, *arguendo*, it was error then it could at most be harmless error. See *People v. Parker*, 194 Ill. App. 3d 1048, 1058 (1990) (noting a test

for harmless error is "whether the evidence is cumulative or merely duplicates properly admitted evidence."). Second, there is no indication the parties were prejudiced by receiving incomplete evidence from the integrated assessment. Rather, the trial court received an incomplete copy of the evidence that was corrected once the error was realized. Third, the court made respondent aware of the technical error to which respondent did not object to the error being corrected. Therefore, we find there was no error, let alone plain error.

¶ 41                                III. CONCLUSION

¶ 42          For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 43          Affirmed.